DAWN JACOBS *v.* HEALEY FORD-SUBARU, INC.
(14990)

PETERS, C. J., and CALLAHAN, BERDON, KATZ and PALMER, Js.

708

Argued November 1, 1994—decision released January 10, 1995

*Joanne S. Faulkner*, for the appellant (plaintiff).
*Jeffrey D. Ginzberg*, for the appellee (defendant).

KATZ, J. The issue before the court is whether the defendant, who has violated General Statutes § 42-98[1]

---

[1] General Statutes § 42-98 provides: "FORECLOSURE. (a) REPOSSESSION. When the retail buyer is in default in the payment of any sum due under the retail instalment contract or instalment loan contract, or in the performance of any other condition which such contract requires him to perform, or in the performance of any promise, the breach of which is by such contract expressly made a ground for the retaking of the goods, the holder of the contract may retake possession thereof. Unless the goods can be retaken without breach of the peace, it shall be retaken by legal process, but nothing herein contained shall be construed to authorize a violation of the criminal law. In the case of repossession of any motor vehicle without the knowledge of the retail buyer, the local police department shall be notified of such repossession immediately thereafter. In the absence of a local police department or if the local police department cannot be reached for notification, the state police shall be promptly notified of such repossession.

"(b) NOTICE OF INTENTION TO REPOSSESS. Not less than ten days prior to the retaking, the holder of such contract, if he so desires, may serve

## of the Retail Instalment Sales Financing Act (RISFA)

upon the retail buyer, personally or by registered or certified mail, a notice of intention to retake the goods on account of the buyer's default. The notice shall state the default and the period at the end of which such goods will be retaken, and shall briefly and clearly state what the retail buyer's rights under this subsection will be in case such goods are retaken. If the notice is so served and the buyer does not perform the conditions and provisions as to which he is in default before the day set for retaking, the holder of the contract may retake said goods and hold such subject to the provisions of subsections (d), (e), (f), (g) and (h) of this section regarding resale, but without any right of redemption.

"(c) REDEMPTION. If the holder of such contract does not give the notice of intention to retake, described in subsection (b), he shall retain such goods for fifteen days after the retaking within the state in which they were located when retaken. During such period the retail buyer, upon payment or tender of the unaccelerated amount due under such contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in such contract as precedent to the retail buyer's continued possession of such goods, or upon performance or tender of performance of any other promise for the breach of which such goods were retaken, and upon payment of the actual and reasonable expenses of any retaking and storing, may redeem such goods and become entitled to take possession of the same and to continue in the performance of such contract as if no default had occurred. The holder of such contract shall within three days of the retaking furnish or mail, by registered or certified mail, to the last known address of the buyer a written statement of the unaccelerated sum due under such contract and the actual and reasonable expense of any retaking and storing. For failure to furnish or mail such statement as required by this section, the holder of the contract shall forfeit the right to claim payment for the actual and reasonable expenses of retaking and storage, and also shall be liable for the actual damages suffered because of such failure. If such goods are perishable so that retention for fifteen days as herein prescribed would result in their destruction or substantial injury, the provisions of this subsection shall not apply and the holder of the contract may resell the goods immediately upon such retaking.

"(d) COMPULSORY RESALE. If the retail buyer does not redeem such goods within fifteen days after the holder of the contract has retaken possession, the holder of the contract shall sell such goods at public or private sale which sale may be held not less than fifteen days and shall be held not more than one hundred eighty days after the retaking. When the holder of the contract retakes possession by legal process, and an answer is interposed, the holder of the contract may, at his election, hold such retaken goods for a period not to exceed thirty days after the entry of final judgment by a court of competent jurisdiction entitling the holder of the contract to possession

and General Statutes § 42a-9-504[2] of the Uniform Commercial Code (UCC), must pay damages under each statute to the injured plaintiff. We conclude that,

of such goods before holding such resale. The holder of the contract shall give the retail buyer not less than ten days' written notice of the time and place of any public sale, or the time after which any private sale or other intended disposition is to be made, either personally or by registered mail or by certified mail receipted for on mailing directed to the retail buyer at his last-known place of business or residence. The holder of the contract may bid for such goods at any public sale. The proceeds of the resale shall be considered to be either the amount paid for such goods at such sale or the fair cash retail market value of such goods at the time of repossession, whichever is the greater, except as otherwise provided in subsection (g) of this section.

"(e) PROCEEDS OF RESALE. Proceeds of the resale shall be applied (1) to the payment of the actual and reasonable expenses thereof, (2) to the payment of the actual and reasonable expenses of any retaking and storing of said goods, (3) to the satisfaction of the balance due under the contract. Within thirty days of the resale, the holder of the contract shall give the retail buyer a written statement itemizing the disposition of the proceeds. Any sum remaining after the satisfaction of such claims shall be paid to the retail buyer.

"(f) DEFICIENCY ON RESALE. Notwithstanding that the proceeds of the resale are not sufficient to defray the actual and reasonable expenses thereof, and also such actual and reasonable expenses of any retaking and storing of such goods and the balance due under the contract, the holder of the contract may not recover the deficiency from the retail buyer or any surety or guarantor for him, or from any one who has succeeded to the obligations of such retail buyer, except as provided in subsection (g) of this section.

"(g) FAIR MARKET VALUE. If the goods retaken is a motor vehicle the aggregate cash price of which was more than two thousand dollars, the prima facie fair market value of such motor vehicle shall be one-half of the sum of the average trade-in value plus the average retail value of such motor vehicle as stated in the National Automobile Dealers Association Used Car Guide, Eastern Edition, as of the date of repossession. In the event that the value of such motor vehicle is not stated in such publication, then the fair market value at retail minus the reasonable costs of resale shall be determined by the court. The prima facie evidence of fair market value of such motor vehicle so determined may be rebutted only by direct in-court testimony. If such value of the motor vehicle is less than the balance due under the contract, plus the actual and reasonable expenses of the retaking of possession, the holder of the contract may recover from the retail buyer, or from anyone who has succeeded to his obligations, as a deficiency, the amount by which such liability exceeds such fair market value, as defined

because the remedies are not explicitly exclusive, there is no conflict between the two provisions. Accordingly, both must be given concurrent effect and cumulative remedies must be awarded.

in this subsection. If the actual resale price received by the holder exceeds such fair market value, as defined in this subsection, the actual resale price shall govern.

"(h) ELECTION OF REMEDIES. After the holder retakes possession as provided in subsection (a), or if the holder obtains a prejudgment remedy against the goods under chapter 903a, the retail buyer or anyone who has succeeded to his obligations shall not be liable for any balance due, except to the extent permitted by subsection (g) of this section. The holder may seek a monetary judgment on the contract against the buyer unless the goods have been repossessed, with or without judicial process. Goods purchased under the contract shall not be executed upon to satisfy such judgment. When such judgment becomes final, the holder's security interest in the goods shall be extinguished. If the contract covers a retail sale of a motor vehicle required to be registered, the holder shall comply with section 14–188.

"(i) RECOVERY OF PART PAYMENTS. If the holder of the contract fails to comply with the provisions of subsections (c), (d), (e), (f), (g) and (h), after retaking the goods, the retail buyer may recover from the holder of the contract his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract.

"(j) WAIVER OF STATUTORY PROTECTION. No act or agreement of the retail buyer before or at the time of the making of a retail instalment contract or instalment loan contract nor any agreement or statement by the retail buyer in such contract shall constitute a valid waiver of the provisions of subsections (c), (d), (e), (f), (g), (h) and (i).

"(k) LOSS. After the delivery of the goods to the retail buyer and prior to any retaking thereof by the holder of the contract, the risk of injury and loss shall rest upon the retail buyer."

[2] General Statutes § 42a-9-504 provides: "SECURED PARTY'S RIGHT TO DISPOSE OF COLLATERAL AFTER DEFAULT; EFFECT OF DISPOSITION. (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to article 2. The proceeds of disposition shall be applied in the order following to (a) the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party; (b) the satisfaction of indebtedness secured by the security interest under which the disposition is made; (c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured

The plaintiff, Dawn Jacobs, instituted this action against the defendant, Healey Ford-Subaru, Inc., for alleged multiple violations of RISFA and the UCC. She

party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand.

"(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus and, unless otherwise agreed, the debtor is liable for any deficiency; but if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

"(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

"(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this part or of any judicial proceedings (a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or (b) in any other case, if the purchaser acts in good faith.

"(5) A person who is liable to a secured party under a guaranty, endorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article."

sought minimum statutory damages of $6500, costs and attorney's fees, pursuant to the UCC and RISFA, as well as actual and punitive damages pursuant to General Statutes § 42-110b,[3] the Connecticut Unfair Trade Practices Act (CUTPA), and General Statutes § 36-243b[4] of the Creditors' Collection Practices Act (CCPA). The defendant denied the allegations and counterclaimed for a deficiency of $1608.07.[5]

Pursuant to Practice Book § 430,[6] the case was referred to an attorney trial referee (referee), who

[3] General Statutes § 42-110b provides: "UNFAIR TRADE PRACTICES PROHIBITED. LEGISLATIVE INTENT. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

[4] General Statutes § 36-243b provides: "PROHIBITED ACTS. No creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt."

[5] The defendant sought permission to file an amended answer and counterclaim after the close of evidence. The attorney trial referee denied permission and concluded that it was not necessary for a complete resolution of the matter. The defendant has never challenged this ruling.

[6] At the time in question, Practice Book § 430 provided: "In addition to matters required to be referred to a trial referee, the judicial authority may refer any civil nonjury case or, with the written consent of the parties or their attorneys, any civil jury case, pending before such court, in which the issues have been closed, to a trial referee, who shall have and exercise the powers of the superior court in respect to trial, judgment and appeal in such case. Any case referred to a trial referee shall be deemed to have been referred for all further proceedings and judgment, including matters pertaining to any appeal therefrom, unless otherwise ordered before or after

found the following facts. In October, 1988, the defendant sold a used 1987 Ford Tempo to the plaintiff.[7] The cash price of the vehicle was $10,647.03; the amount financed was $10,898.90; and the finance charge was $4196.14. There was a down payment of $2600, and the plaintiff made three payments of $314.48 each. In May, 1989, the plaintiff voluntarily returned the vehicle to the defendant. According to the National Automobile Dealers Association formula, at the time the vehicle was returned its value was $6500.[8]

The referee further found that the defendant never gave the plaintiff advance notice of its intent to repossess the vehicle before the plaintiff returned it. See General Statutes § 42-98 (b).[9] The defendant's only correspondence with the plaintiff consisted of two demands for a deficiency of $5285.07 that were mailed in August and November, 1989. Only the letter of November 10, 1989, however, arrived at the correct location and was received by the plaintiff.[10] On November 9, 1989, the vehicle was sold for $8427. The defendant was unaware that the vehicle had been sold the day before it sent the second letter because, while moving its dealership, it had misplaced the pertinent file. On or before Febru-

---

the reference. The court may also refer to a trial referee any motion for summary judgment and any other pretrial matter in any civil nonjury or civil jury case."

[7] The retail instalment contract identified Dawn Jacobs as the cobuyer and her husband, Jay Jacobs, as the buyer. The referee found that only Jay Jacobs took title to and registered the vehicle.

[8] See General Statutes § 42-98 (g) for the method of calculating the fair market value based upon the National Automobile Dealers Association Used Car Guide, Eastern Edition.

[9] The record does not explicitly disclose how much the plaintiff owed the defendant in unpaid instalments. The parties agreed, however, that the contract, executed in October, 1988, called for monthly payments of $314.48 and that by May, 1989, the plaintiff had made only three monthly payments.

[10] The plaintiff moved several times during the period that these events transpired. She lived at one address when she purchased the vehicle, at another when she returned it, and at a third at the time of the resale.

ary 18, 1991, the defendant located its file and directed its attorney to notify the plaintiff of the sale and of the corrected deficiency balance due of $1608.07.

The referee first concluded that the plaintiff was a "retail buyer" as defined by General Statutes § 42-83 (3) (h),[11] and that, despite its voluntary return, the vehicle had been "repossessed" within the meaning of § 42-98 (b). Neither of these conclusions has been challenged. Because the vehicle had been sold under a retail instalment contract, the referee concluded that the defendant was obligated under the notice and resale provisions of RISFA.

The referee also concluded that the defendant had violated § 42-98 (c), (d) and (e) based upon his findings that the defendant had failed to provide the plaintiff with any notice of: (1) the right to redeem; (2) the proposed sale; (3) the actual sale; or (4) the disposition of the proceeds. Furthermore, the defendant did not credit the plaintiff with the statutory fair market value of the vehicle, either before or after its resale, as required by § 42-98 (e) and (g). In light of the defendant's admitted violations of these provisions, the referee precluded it from recovering any claimed deficiency under its counterclaim. The referee then concluded that neither CUTPA nor CCPA had been violated and thereafter applied the statutory formula under RISFA to award the plaintiff $885.86 in damages. See General Statutes § 42-98 (i).[12]

---

[11] General Statutes § 42-83 (3) (h) provides: " 'Retail buyer' means a person who buys or agrees to buy one or more articles of goods from a retail seller not for the purpose of resale or lease to others in the course of business and who executes a retail instalment contract or an instalment loan contract in connection therewith."

[12] The amount of the damages awarded pursuant to the formula as provided by § 42-98 (i) is not challenged in this appeal.

The plaintiff objected to the report, pursuant to Practice Book § 440,[13] and claimed that: she was entitled to the minimum consumer damages provided by the UCC; she should have received attorney's fees under General Statutes § 42-150bb;[14] and the referee should have concluded that both CUTPA and CCPA had been violated.

The trial court accurately recited all the pertinent facts found by the referee and his conclusion of law that the notice provisions of RISFA had been violated. The trial court then concluded that because the referee's

[13] At the time in question, Practice Book § 440 provided: "A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted.

"If an objection raises an issue of fact the determination of which may require the consideration of matters not appearing in the report or stenographic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, plead to it by a motion to strike, answer or other proper pleading."

[14] General Statutes § 42-150bb provides: "ATTORNEY'S FEES IN ACTION BASED ON CONSUMER CONTRACT OR LEASE. Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party. No attorney's fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

report contained insufficient factual findings to support the plaintiff's claim that the defendant had failed to resell the vehicle in a commercially reasonable manner, as required by § 42a-9-504, the damages sought under the UCC could be predicated only on the plaintiff's claim that the notice provisions of the UCC had been violated. The trial court rejected the plaintiff's objection to the referee's denial of damages under the UCC concluding that the provisions of RISFA took precedence and thereby limited the amount of damages to which the plaintiff was entitled. In reaching its decision, the trial court relied on two statutes that assign priority to the provisions of RISFA when there is a conflict between RISFA and the UCC. Section 42-83 (1) provides that "[a] transaction subject to this chapter is also subject to the Uniform Commercial Code, title 42a, but in case of any conflict the provisions of this chapter shall control." General Statutes § 42a-9-203 (4) provides that "[a] transaction, although subject to this article, is also subject to sections . . . 42-83 to 42-99, inclusive . . . and in the case of conflict between the provisions of this article and any such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein." The trial court also affirmed the referee's conclusion that the defendant's conduct did not amount to an unfair trade or collection practice. Finally, the trial court rejected the plaintiff's claim for attorney's fees pursuant to § 42-150bb because the plaintiff had failed to assert this specific statutory claim to the referee and had, therefore, failed properly to place it before the referee for consideration. Accordingly, the trial court overruled the plaintiff's objection to the report and rendered judgment in favor of the plaintiff in the amount of $885.86.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The plaintiff raises three issues: (1) whether the trial court properly refused to award damages under both RISFA and the UCC when both statutes had been violated; (2) whether the trial court properly concluded that the defendant had not violated CUTPA; and (3) whether the trial court properly denied the plaintiff attorney's fees under § 42-150bb.[15] We affirm in part and reverse in part.

I

We first consider the question of cumulative remedies. The referee explicitly found that the defendant had violated RISFA.[16] In light of that finding, we must

---

[15] The trial court's denial of the CCPA claim has not been appealed, and we do not address it here.

[16] The defendant first contends that the referee failed to find a violation of the UCC. We disagree. Although the requirements of § 42a-9-504 are more general than those set forth in § 42-98, the record shows a total absence of any notification as to the time and place of sale or other disposition of the vehicle. This case does not present an issue as to whether the notice complied with the specific requirements of RISFA or whether it violated the relevant portions of the UCC. See *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 582 A.2d 190 (1990). Any issue of accuracy of the notice regarding the plaintiff's right to redeem, etc. is not before us because the defendant failed to provide the plaintiff any notice at all. In light of this undisputed fact, implicit in the referee's specific findings of fact outlining all the various ways in which the more detailed notice provisions of RISFA had been violated is the referee's conclusion that the general provisions of the UCC equally had been ignored by the defendant. This finding, supported by the uncontested evidence that no notification of sale or other disposition had been provided, was a proper exercise of the referee's discretion. Practice Book § 434; *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 636, 646 A.2d 772 (1994) (finding of fact is clearly erroneous only when there is no evidence in record to support it); *Stamford* v. *Kovac*, 229 Conn. 627, 630, 642 A.2d 1190 (1994) (trial referee is finder of fact); *State* v. *Damon*, 214 Conn. 146, 154, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990) (finding of fact will not be overturned unless clearly erroneous); *All American Pools, Inc.* v. *Lato*, 20 Conn. App. 625, 627, 569 A.2d 562 (1990).

resolve: (1) whether a conflict exists between the provisions of RISFA and the UCC; and (2) whether, in the absence of a conflict, the provisions can be given concurrent effect. We conclude that there is no conflict and that the plaintiff was entitled to damages under both statutory schemes.

We begin our analysis with a review of the statutes themselves. Section 42-83 (1) provides that a transaction subject to RISFA is also subject to the UCC, but adds that RISFA controls in case of any conflict. Similarly, § 42a-9-203 (4) provides that a transaction subject to the UCC is also subject to RISFA. A creditor must therefore comply with both RISFA and the UCC unless a conflict exists. See *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 582 A.2d 190 (1990).

The defendant argues that a conflict exists solely because the provisions of RISFA and the UCC include different and distinct remedies. RISFA provides a statutory formula that allows the retail buyer to recover "his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract." General Statutes § 42-98 (i). The UCC allows the debtor to recover "an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten percent of the cash price." General Statutes § 42a-9-507 (1). Because the remedies are different, the defendant contends that only one can apply. On the basis of that supposition, the defendant further maintains that a conflict exists and therefore only the remedy provided by RISFA applies. Because we disagree with the defendant's underlying premise that each of the remedy provisions is exclusive, we find no conflict.

The defendant's argument has been considered and rejected in other jurisdictions. In *Wilmington Trust Co.*

v. *Conner*, 415 A.2d 773, 779 (Del. 1980), the court confirmed its adherence to the "absolute bar" rule that failure to comply strictly with the notice provisions of the Delaware UCC[17] acts as an absolute bar to recovery of a deficiency judgment by the creditor. The court found that both the "absolute bar" rule and the statutory remedy under the Delaware UCC § 9-507 (1),[18] are available as debtor's remedies. The creditor had argued that the remedy in § 9-507 (1) was intended to be exclusive and that the debtor was therefore not entitled to avail himself of the absolute bar rule. In rejecting this claim, the court referred to § 1-106 (1) of the Delaware UCC, which specifically recognizes the applicability of other remedies, providing that the remedies afforded by the UCC "shall be liberally administered . . . but neither consequential nor special nor penal damages may be had except as specifically provided in this subtitle *or by other rule of law.* (Emphasis added.)" (Internal quotation marks omitted.) *Wilmington Trust Co. v. Conner,* supra, 779. The court concluded that "because of their learning, skill and experience, the drafters of the Uniform Commercial Code, had they truly intended the remedy to be exclusive, would have been scrupulously careful to state it. Their omission of language in § 9-507 (1) expressly indicating exclusivity of the remedy thus speaks volumes against the correctness of [the] plaintiff's position." (Internal quotation marks of the Delaware UCC omitted.) Id., 780. Additionally, the court relied on § 1-103 of the Delaware UCC, which provides that other rules of law may supplement the UCC unless they are displaced by particular UCC provisions. The Delaware court interpreted

---

[17] The Connecticut and Delaware Uniform Commercial Codes are identical with respect to the statutes cited here.

[18] Section 9-507 (1) of the Delaware UCC gives the debtor a right to recover from a secured party any loss caused by a failure to comply with the provisions of the code regarding the disposal of collateral and if the collateral is consumer goods, minimum damages are provided for.

that section to mean that only if other provisions "explicitly" displace any other rule of law, will such provision be exclusive. Id., 779. The court concluded that the drafters' failure explicitly to limit a debtor to § 9-507 (1) reflects an intent that the remedy contained therein not be the debtor's sole recourse. Therefore, the debtor was entitled to avail himself of the remedy provision of the absolute bar rule.[19] Id., 780.

Other courts have come to the same conclusion. In *Camden National Bank* v. *St. Clair*, 309 A.2d 329, 332 (Me. 1973), the court remarked that "in view of the omission of § 9-507 (1) expressly to state that it provides an exclusive remedy for notification deficiencies, U.C.C. § 1-103 becomes most significant. Its import is that the right of action established by § 9-507 (1), absent clear expression to the contrary, must be held cumulative in the context of remedies previously, or otherwise, afforded." See also *Industrial Valley Bank & Trust Co.* v. *Nash*, 349 Pa. Super. 27, 44, 502 A.2d 1254 (1985) (Motor Vehicle Sales Financing Act [MVSFA] provisions not intended to be exclusive; UCC and MVSFA are "in pari materia" and should be construed together to enhance the purposes of both statutes); *Davenport* v. *Chrysler Credit Corp.*, 818 S.W.2d 23, 31 (Tenn. App. 1991) (§ 9-507 [1] "remedies are not intended to be exclusive and, in fact, are cumulative to other remedies available to debtors under state law"); see generally *Atlas Thrift Co.* v. *Horan*, 27 Cal. App. 3d 999, 1008, 104 Cal. Rptr. 315 (1972) (remedies available before adoption of UCC are not eliminated unless UCC specifically deletes them); *Christian* v. *First National Bank*, 531 S.W.2d 832, 843 (Tex. App. 1975) (same).

---

[19] We recognize that the "absolute bar rule" is a "defensive" recourse that prevents a creditor from taking action while RISFA provides an "offensive" remedy that awards a debtor damages against an errant creditor. This distinction played no role in the Delaware court's treatment of the issue of whether the remedy provision of § 9-507 was exclusive.

Although the remedy provisions of RISFA and the UCC provide different relief, we are persuaded that both can apply simultaneously. Mindful that consumer legislation must be interpreted so as to implement its remedial purpose of protecting consumer buyers; *Mack Financial Corp.* v. *Crossley*, 209 Conn. 163, 166, 550 A.2d 303 (1988); *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 116, 520 A.2d 162 (1987); and in accord with the reasoning other jurisdictions have applied to resolve this issue, we conclude that there is no conflict between the remedy provisions of RISFA and the UCC, in the absence of a clear mandate that the remedies are exclusive. Accordingly, under § 42-83 (1), the remedies are cumulative and the plaintiff is entitled to collect damages under both statutory formulas as set forth in § 42-98 (i) and § 42a-9-507 (1).[20]

Our decision that the remedies of RISFA and the UCC are cumulative is further supported by public policy considerations. Repossession statutes are enacted to protect the consumer from well documented repossession abuses and to encourage and promote compliance with the laws that govern such actions. *Barco Auto Leasing Corp.* v. *House*, supra, 202 Conn. 116 ("buyer's remedy must therefore be implemented in a fashion that will take full account of a governing statute that was purposefully designed to correct the often gross imbalance in bargaining power between a

---

[20] The trial court relied on the phrase in § 42a-9-203 (4), that "[f]ailure to comply with any applicable statute has only the effect which is specified therein," to limit the plaintiff's remedy to § 42-98 (i). Provisions of regulatory statutes covering the field of consumer finance, such as RISFA, prevail over article 9 of the UCC in case of conflict. The last sentence of § 42a-9-203 (4) was added "to make clear that no doctrine of total voidness for illegality is intended: failure to comply with the applicable regulatory statute has whatever effect may be specified in that statute, but no more." General Statutes Ann. § 42a-9-203, comment 6 (1990). Therefore, when a conflict exists, the applicable regulatory statute, such as RISFA, will dictate the consequences that may flow from its violation. Because we have decided that no conflict exists, the limiting provision is inapplicable.

retail seller and a retail buyer"); P. Shuchman, "Profit on Default: An Archival Study of Automobile Repossession and Resale," 22 Stan. L. Rev. 20 (1969); Symposium, "Defaulting Debtors and the Judicial Process—The FTC's Proposed Restriction on Deficiency Judgments: § 444.2 (a) (7) of the Rule on Credit Practices," 8 Conn. L. Rev. 457 (1976); note, "I Can Get It For You Wholesale: The Lingering Problem of Automobile Deficiency Judgments," 27 Stan. L. Rev. 1081 (1975); comment, "Business as Usual: An Empirical Study of Automobile Deficiency Judgment Suits in the District of Columbia," 3 Conn. L. Rev. 511 (1971). The problem with statutes like RISFA, however, is that the award of damages is too minimal to provide a "stimulus to make it advantageous for the seller to follow [RISFA]." 2A Uniform Laws Annotated (1924) § 129, p. 181. The penalty clause is thus "of little value. . . . [I]n the case of the ordinary conditional sale a threat of absolute liability for one-quarter of the payments will not be very persuasive. If the part payments have been trifling in amount, an absolute liability for 25 percent of the payments will be of little importance." Id., pp. 181–82.

"The Uniform Commercial Code's drafters included the statutory penalty for consumer goods in Section 9-507 (1) because they believed that compensatory damages would not be a sufficient deterrent in the average consumer case. See [2 J. White & R. Summers, Uniform Commercial Code (3d Ed. 1988) § 27-18, p. 623]. They intended that the statute would provide the minimum recovery for consumers who prove that a secured party did not proceed in accordance with the Uniform Commercial Code. See 9 R. Anderson, Anderson on the Uniform Commercial Code § 9-507:21 (1985)." *Davenport* v. *Chrysler Credit Corp.*, supra, 818 S.W.2d 31.

"The purpose of . . . [UCC § 9-507] is to encourage creditors to comply with all provisions of part 5 or face the consequences of noncompliance. We agree with the view that the drafters created a statutory penalty in UCC [§] 9-507 to 'up the ante for those who would abuse the consumer' because in most cases, compensatory damages are 'an insufficient deterrent to creditor misbehavior in nickel and dime consumer transactions where such damage will amount to very little . . . .' [2 J. White & R. Summers, supra, § 27-18, p. 623]." *Erdmann* v. *Rants*, 442 N.W.2d 441, 443 (N.D. 1989). "The penalty evinces a strong policy by the UCC drafters and our Legislature that the best protection for consumers is creditor compliance with all of the default provisions of part 5. A flat penalty for noncompliance is the means chosen by the framers of the UCC and our Legislature to ensure that creditors take careful steps to comply with those default provisions." Id., 444.

Under the facts of this case, the remedy afforded by the UCC is the only real deterrent. It is irrelevant that the penalty bears little or no relation to the actual loss. *First City Bank—Farmers Branch* v. *Guex*, 677 S.W.2d 25, 29 (Tex. 1984) ("[o]bviously the drafters of the Uniform Commercial Code intended . . . to penalize the secured party if the debtor suffered no losses or his losses were less that the statutory penalty"). The plaintiff's actual damages under RISFA were based on the down payment and the three monthly payments that were made. According to the statutory formula, the referee awarded the plaintiff only $885.86. Imposing cumulative remedies for a violation of RISFA and the UCC obviously creates a greater incentive to comply with repossession laws. We therefore conclude that the plaintiff is entitled to damages under both statutory schemes and we remand the case for application of the proper statutory formula.

## II

The plaintiff also asserts that the trial court should have concluded that the defendant's conduct constituted a violation of CUTPA. In essence, she maintains that the defendant's violation of the repossession statutes was an unfair trade practice that offended public policy. We disagree.

We recently had occasion to discuss the well established test for determining whether a particular act or practice violates CUTPA. "It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. *Conaway* v. *Prestia,* [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) . . . . *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567–68, 473 A.2d 1185 (1984).

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614,

[and] 59,635 (1978). . . . Id., 569 n.15. Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., *Sprayfoam, Inc.* v. *Durant's Rental Centers, Inc.*, 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., *Sportmen's Boating Corporation* v. *Hensley*, [192 Conn. 747, 474 A.2d 780 (1984)]. *Web Press Services Corporation* v. *New London Motors, Inc.*, [203 Conn. 342, 355, 525 A.2d 57 (1987)]. Furthermore, a party need not prove an intent to deceive to prevail under CUTPA. See id., 363 (knowledge of falsity, either constructive or actual, need not be proven to establish CUTPA violation). *Cheshire Mortgage Service, Inc.* v. *Montes*, [223 Conn. 80, 105–106, 612 A.2d 1130 (1992)]." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 522–23, 646 A.2d 1289 (1994).

The referee found that the defendant had failed to comply with the notice provisions of RISFA. In our resolution of the first issue on appeal, we concluded that these same omissions amounted to a violation of the UCC. In resolving the CUTPA claim, the referee reviewed the statute and the "cigarette rule" to determine whether this lack of compliance constituted a CUTPA violation. The referee also examined the question of whether the defendant's attempts to seek a deficiency judgment from the plaintiff, despite its lack of compliance with the repossession laws, amounted to an unfair trade practice.

The question of whether an action or practice can be the basis of a CUTPA action depends upon all the circumstances of the particular case. *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 242, 520 A.2d 1008 (1987). In her complaint, the plaintiff alleged that the defendant had violated various notice provisions of RISFA and the UCC and that, as a result, she was entitled to damages and counsel fees under CUTPA.

The referee implicitly rejected this per se argument, and independently examined the testimony to decide whether the defendant's conduct violated the established concept of fairness.

To the extent that the referee correctly interpreted the plaintiff's bare allegations of a CUTPA violation[21] as a per se claim, we agree with his rejection of it. When the legislature has intended to make the violation of a consumer statute an automatic violation of CUTPA, it has done so expressly. See, e.g., General Statutes § 20-427 (b) of the Home Improvement Act; General Statutes § 42-141 of the Home Solicitation Sales Act; see also General Statutes §§ 14-16c, 16a-22k, 16a-23a, 20-341y, 20-427, 20-457, 21-35h, 21a-222, 21a-404, 35-1, 36-435*l*, 36-573, 38a-355, 42-103k, 42-103aa, 42-115r, 42-115t, 42-115u, 42-126c, 42-141, 42-232, 42-251. There is no such provision in RISFA or in the UCC. It is necessary, therefore, that we examine all the facts surrounding the defendant's noncompliance, as found by the referee, in evaluating the threshold test for CUTPA recovery. In the absence of a motion to correct the report or an objection to its acceptance because the facts had been improperly found,[22] we examine

[21] Following the allegations of the defendant's failure to comply with the various notice provisions of RISFA and the UCC, the complaint set forth the following CUTPA claim: "Plaintiff seeks . . . nominal actual and substantial punitive damages and attorneys fees under the Unfair Trade Practices Act, C.G.S. § 42-110a, the Creditors' Collection Practices Act, C.G.S. § 36-243a . . . ."

[22] See footnote 25 for Practice Book § 438 and footnote 13 for Practice Book § 440.

Although the plaintiff filed an objection to the referee's report, she did not challenge his factual findings. The pertinent claim contained in the objection is that the referee "[e]rred in concluding that the complete failure to comply with repossession laws, or violations of the Creditor's Collection Practices Act, are not unfair or deceptive practices within the Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, since defendant's intent vel non is not an element of a CUTPA violation." In her brief to this court, the plaintiff claims that the defendant's failure to comply with the pertinent notice provisions "could not have been made in good faith." In order to

these facts solely to determine whether the referee's findings were clearly erroneous. *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982).

The referee concluded that the defendant's failure to comply with the pertinent notice provisions did not constitute an unfair collection practice. As predicate findings, the referee remarked upon the defendant's lost records and files and sloppy accounting methods that led to its misrepresentation of the amount of the deficiency. The report filed by the referee contained a discussion of arguments by the defendant that "there was no fraud, deliberate deception or willful misconduct on its part." Although the referee did not incorporate these exact conclusions in his report, he did find that the defendant had sent a demand letter to an outdated address and that because it had temporarily lost its file when it moved its dealership, it was unaware that the vehicle had been sold. The referee further found that upon locating its missing file, the defendant directed its attorney to notify the plaintiff that the vehicle had been sold, to credit the plaintiff with the fair market value of the vehicle and to correct the amount of the deficiency balance. Additionally, the referee entertained the defendant's explanation for its failure to comply with RISFA and the UCC. The defendant argued that the repossession statutes were inapplicable because the plaintiff had not been a retail buyer and the vehicle had not been repossessed. Although he disagreed as a matter of law with the defendant's interpretation of the pertinent terms, the referee did not find that the defendant had been acting in bad faith or that it had been disingenuous in making these arguments. On the basis of these factual underpinnings, the referee concluded that CUTPA had not been violated.

be reviewed, that argument first should have been made in her objection or in a motion to correct. *Garofalo* v. *Argraves*, 147 Conn. 685, 687, 166 A.2d 158 (1960).

The plaintiff urges us nonetheless to hold that the defendant's violation of RISFA and the UCC *necessarily* constituted a violation of CUTPA. The referee implicitly concluded, on the basis of his unchallenged factual findings, that the defendant's statutory noncompliance was not, in fact, unfair, deceptive or oppressive.[23] See *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* supra, 230 Conn. 524; *Gaynor* v. *Union Trust Co.,* supra, 216 Conn. 483. The repossession in issue appears to have been an isolated instance of misinterpretation by the defendant of its obligations due to the unique circumstances of this particular case as distinguished from unfair or deceptive acts or practices in the defendant's trade or business. In light of the referee's implicit finding that the defendant's conduct was not in fact unfair, deceptive, or oppressive, we conclude that the plaintiff has not established her CUTPA claim.

## III

Finally, the plaintiff claims that she is entitled to attorney's fees under § 42-150bb. Because this issue was first raised in her objection to the referee's report, the trial court properly denied the claim. Absent con-

---

[23] The trial court accepted the referee's implicit factual finding that the defendant's noncompliance with the notice requirements of RISFA and the UCC was the result of a good faith mistake and therefore did not constitute fraud, deliberate deception or wilful misconduct. We recognize, however, that CUTPA prohibits unfair or deceptive trade practices without requiring proof of intent to deceive, to defraud or to mislead. See *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV,* 230 Conn. 148, 158, 645 A.2d 505 (1994), and cases cited therein. Therefore, the defendant's lack of such scienter, alone, does not rescue it from CUTPA's clutches. Nevertheless, that the defendant acted in good faith does not necessarily mean that its conduct was merely a technical or inadvertent violation of RISFA or the UCC. There may indeed be circumstances when good faith statutory noncompliance sufficiently offends public policy as to constitute a CUTPA violation. Because the parties in this case have not asked specifically for this court to decide the role of good faith and bad faith in a CUTPA case, we leave that discussion for another day.

tractual or statutory authority, each party must pay its own attorney's fees. *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 590, 552 A.2d 1207 (1989). By its own terms, § 42-150bb applies only to contracts that contain a provision for reciprocal attorney's fees. Neither the referee nor the trial court found that the contract in issue contained such a provision. The plaintiff concedes that the contract was not admitted into evidence, but argues, nevertheless, that the referee took judicial notice of its existence.[24] Even if the referee could take judicial notice of the contract, a matter that we do not decide in this case, the mere *existence* of a contract, however, does not prove that the contract included a *provision* for receiving attorney's fees.

The trial court may not find facts when those facts had not been placed before the referee. *Wixner* v. *Wixner*, 154 Conn. 703, 704, 223 A.2d 807 (1966); see *Stamford* v. *Kovac*, 229 Conn. 627, 633, 642 A.2d 1190 (1994). Although the plaintiff filed an objection to the referee's report, the proper pleading by which to have asserted the claim that the contract in issue contained a reciprocal attorney's fees clause was a motion to correct pursuant to Practice Book § 438.[25] Under those

---

[24] "The doctrine of judicial notice excuses the party having the burden of establishing a fact from introducing formal proof of the fact. Judicial notice takes the place of proof. *Beardsley* v. *Irving*, 81 Conn. 489, 491, 71 A. 580 (1909). A matter that may be the subject of judicial notice is one that is not subject to argument because it is already known to the court or its knowledge is easily accessible to the court, and consequently it is unnecessary and wasteful of time to require evidence of it. *State* v. *Tomanelli*, 153 Conn. 365, 368, 216 A.2d 625 (1966)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 6.1.1.

[25] Practice Book § 438 provides: "If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts, or by stating the claims of the parties made before the committee, or by setting forth rulings upon evidence or other rulings of the committee, he shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions desired by him. He shall accompany the motion with a brief statement of the grounds of each correction asked, with suitable references to

circumstances, the plaintiff could have asked the referee to find the existence of a reciprocal attorney's fees clause. Because she did not bring this matter to the attention of the referee at any time, there was no fact finding in connection with this issue upon which the trial court could have acted. The trial court could render judgment only upon the facts contained within the referee's report. Practice Book § 443.[26]

The judgment of the trial court is reversed in part and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion the other justices concurred.

the testimony. The file shall then be returned to the committee for consideration of the motion to correct. As soon as practicable the committee shall file with the court the motion to correct, together with his decision thereon."

[26] At the time in question, Practice Book § 443 provided: "The court shall render such judgment as the law requires upon the facts in the report as it may be corrected. If the court finds that the committee has materially erred in his rulings or that by reason of material corrections in his findings the basis of the report is subverted or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another committee for a new trial or revoke the reference and leave the case to be disposed of in court.

"The court may correct a report at any time before judgment upon the written stipulation of the parties or it may upon its own motion add a fact which is admitted or undisputed or strike out a fact improperly found."