[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CLASS CERTIFICATION
The plaintiffs, who assert violations of various consumer statutes arising from the actual or threatened repossession of their motor vehicles, have moved pursuant to Practice Book §§ 9-7 and 9-8
for certification of two classes to pursue claims set forth in their Third Amended Complaint, which was filed on December 29, 2000.[1]
CT Page 6240
The court conducted a hearing on the motion on March 19, 2001. At the hearing, the plaintiffs withdrew counts four and eight of the complaint and also withdrew the portion of their motion for class certification in which they had sought certification of a subclass referred to in their motion as Subclass D. This court must therefore decide whether to certify the following classes proposed in the plaintiffs' motion:
1. Subclass A — a class consisting of persons who purchased motor vehicles pursuant to retail installment contracts within the meaning of Conn. Gen. Stat. § 36a-770(c)(6) or installment loan contracts within the meaning of Conn. Gen. Stat. § 36a-770(c)(7) whose vehicles were repossessed by the defendant and who were notified after repossession that in order to redeem their vehicle they would have to pay the accelerated balance on the contract plus repossession and storage charges. The plaintiffs seek to exclude from the class any persons who have already brought separate actions or counterclaims against the defendant.
Plaintiffs Maxine Boyd, Shelly Toliver and Vincent Smith allege that they are members of Subclass A and they seek to represent that class.
The plaintiffs assert that members of this class make the claims set forth in Count 1 (alleged violation of Conn. Gen. Stat. § 36a-785
(c)), Count 6 (alleged violation of Conn. Gen. Stat. § 42a-9-501), and Count 9 (alleged violation of Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.) of the complaint.
 2. Subclass E — a class consisting of persons whose cars were repossessed by the defendant in the circumstances described in the definition of Subclass A to whose vehicles the defendant disposed of and to whom the defendant did not send an accounting of the proceeds of disposition of the vehicle within 180 days after repossession.
Plaintiffs Maxine Boyd and Shelly Toliver allege that they are members of Subclass E, and they seek to represent that class.
The plaintiffs assert that members of this class make the claims set forth at Count 5 (alleged violation of Conn. Gen. Stat. § 36a-785
(e)) and Count 9 (alleged violation of CUTPA) of the complaint. CT Page 6241
Though the plaintiffs do not identify a time frame in their motion, in their supporting brief they refer to repossession notices provided between July 1993 and October 1998, and the court therefore considers this to be the relevant time frame for assessing the motion. Class certification is not sought as to the claims of plaintiffs Kuwar and Forbes in Counts 2 and 10. The plaintiffs have designated Counts 3 and 7 as "deleted" and they withdrew Counts 4 and 8 at oral argument.
Standard of review
Practice Book § 9-8 provides that an action "may be maintained as a class action if the prerequisites of Practice Book Section 9-7 are satisfied and the judicial authority finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The prerequisites of P.B. § 9-7 are that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
The Connecticut Supreme Court has ruled that the Connecticut rules for class certification are substantially similar to Rule 23 of the Federal Rules of Civil Procedure and that federal case law construing that rule may be used as an aid to construction of the state provisions. Marr v.WMX Technologies, 244 Conn. 676, 681 (1998). The movant bears the burden of establishing that each requirement of the Practice Book rules is met.Arduini v. Automobile Ins. Co. of Hartford, 23 Conn. App. 585, 589
(1990).
While the court must analyze the plaintiffs' claims to determine whether the criteria for class certification are met, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974); Marr v. WMXTechnologies, supra, 244 Conn. 680.
The federal courts have noted that class actions serve an important function in the system of civil justice because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." Deposit Guaranty National Bankv. Roper, 445 U.S. 326, 338, rehearing denied, 446 U.S. 947 (1980). CT Page 6242
Proposed Subclass A
The plaintiffs, after conducting discovery on issues related to this motion, have represented to the court that during the period from July 1993 to October 1998, the defendant used a notice form in which the amount required to redeem a motor vehicle after repossession was identified not as the amount of the payments in default, but the accelerated balance of all payments due under the installment contract, plus costs of repossession and storage. The plaintiffs have represented that this form was used in over 3,000 transactions.
The defendant has not denied that the calculation alleged to violate Conn. Gen. Stat. § 36a-785 (c) was used uniformly as a result of utilization of the form at issue, nor does it dispute the number of transactions alleged. The defendant opposes certification of this subclass on the ground that some members of the class may no longer be eligible to assert claims because they may have participated in bankruptcy proceedings, their claims may be res judicata because of enforcement actions already resolved, or because the statute of limitation may have passed on their claims. It also contests whether the plaintiffs are competent class representatives.
The defendant has observed in its brief that some persons whose vehicles were repossessed may have agreed to arbitrate disputes. The defendant does not make this claim with regard to Subclass A, but only as to Subclass E and the withdrawn Subclass D. (Defendant's Brief, p. 32).
The court finds that the allegation of use of a form that included an improper calculation satisfies the requirement of commonality. The issue of a defense of res judicata will not arise since the class the plaintiffs seek to represent expressly excludes persons who are already involved in individual suits with the defendant. The claim that some potential class members may have filed for bankruptcy does not necessarily identify a difference between such people and other potential class members. In rejecting such an objection to class certification in Wilborn v. Dun Bradstreet CORP., 180 F.R.D. 347 (N.D.Ill. 1998), the district court noted that enforcement of consumer protection statutes would be impermissibly impaired if the mere possibility of bankruptcy filings were seen as precluding class certification. The court in that case noted that determination of damages with regard to bankrupts "need not require a highly fact-intensive inquiry." Id., 356.
The defendant asserts that any potential class member against whom it recovered ajudgment for nonpayment of amounts claimed to be due under an installment contract would be barred by the doctrine of res judicata from CT Page 6243 asserting a claim for damages resulting from the claimed violations.
The defendant assumes that the doctrine of res judicata applies not only to defenses that could have been asserted in a collection suit, but also to counterclaims that could have been asserted. Connecticut's Appellate Court rejected this view in Hansted v. Safeco Insurance Co.of America, 19 Conn. App. 515, 520 n. 4, cert. denied, 212 Conn. 819
(1989):
 Because Connecticut does not have a compulsory counterclaim rule; see Practice Book §§ 116 and 168; [the plaintiff] cannot be precluded from bringing the present claim on the ground that he failed to bring a counterclaim in [an earlier lawsuit] for indemnification. See 1 Restatement (Second), Judgments § 22.
Practice Book § 10-10, formerly § 116, provides that a defendant "may" file a counterclaim against any other party to the action not that he or she "must" or "shall" do so. Similarly, Practice Book § 10-54, the former § 168, provides that a defendant "may" file a counterclaim, not that the defendant "must" or "shall" do so.
The court finds that the requirements of typically, commonality and numerosity are satisfied.
The defendant asserts, however, that the representative parties cannot meet the requirement, imposed by Practice Book § 9-7 that they will "fairly and adequately protect the interests of the class." The defendant notes that at their depositions the plaintiffs who are proposed as class representatives were not able to discuss the claims fluently. Such is not the test of adequacy. Kamen v. Kemper Financial Services, Inc.,908 F.2d 1338, 1349 (7th Cir. 1990), reversed on other grounds,500 U.S. 90 (1991) ("When defendants' counsel took [plaintiffs] deposition and learned that she knew little about either the Fund or the case and had given counsel free reign, they learned only that this case fits the norm."); Rivera v. Fair Chevrolet Geo Partnership, 165 F.R.D. 361,168 F.R.D. 11 (D.Conn. 1996). The issue is, instead, whether the proposed class representatives have interests that are antagonistic to the interests of other class members. Anchem Products, Inc. v. Windsor, 117 S.Ct. 2231,2250 (1997). No such antagonistic interest has been identified.
The plaintiffs' arrangement with their counsel whereby their counsel will advance the costs of litigation does not demonstrate inadequacy. Rule 1.8(e)(1) of the Connecticut Rules of Professional Responsibility permits lawyers to pay court courts and expenses of litigation on behalf CT Page 6244 of a client, with repayment contingent on the outcome of the matter.
The defendant further objects that the plaintiffs do not meet the requirement of ability to fairly and adequately protect the interests of the class because of the level of experience of the counsel they have engaged and because, in the view of the defendant's counsel, plaintiffs counsel should have accepted a proposed settlement. Plaintiffs counsel Edward K. O'Brien has considerable experience in representing plaintiffs in class action litigation. Plaintiffs counsel Daniel Blinn represents a plaintiff class in another case pending before another judge on the Complex Litigation Docket, and he has submitted an affidavit stating that while he was a partner at Pepe Hazard, LLP, he was counsel in factually complex multi-party cases. His background in consumer law and current pursuit of numerous cases involving claims of violation of consumer protection statutes indicates adequate familiarity with the pertinent procedural and substantive law. The quality of the briefs and pleadings submitted in this case further suggest that plaintiffs are represented by counsel equal to the task of protecting the interests of class members.
The defendant's views concerning its prior offers of settlement, though couched as indications of inadequacy, could just as appropriately be viewed as indications of unwillingness of plaintiffs' counsel to subordinate the interests of the class when the defendant made proposals that could be construed as calculated to create a conflict of interest between counsel and their clients.
The defendant further objects that a class action is not superior to other forms of adjudication, notably, multiple individual actions. The defendant asserts that differing damages claimed by each class member and the possibility of the maintenance of differing defenses and counterclaims presents the likelihood that a class action will achieve no efficiencies over multiple individual claims. The advantage of a class action is that the courts will not have to decide on multiple occasions whether the same notice form violates the cited statutes. The possibility of offsets from claimed nonpayments would potentially affect the amount of damages; however, the need to adjudicate varying amounts of damages for class members has been held not to be a reason, in and of itself, to deny class certification. Marr v. WMX Technologies, supra,244 Conn. 682-83 (1998).
This court finds that the plaintiffs have demonstrated that the criteria for class certification are met with regard to Subclass A and that motion to certify Subclass A should be granted.
Proposed Subclass E
CT Page 6245
The plaintiffs define proposed Subclass E as including all persons "as to whom [the defendant] did not serve, by a date that was not less than ten days prior to any date set for taking, a notice of intent to repossess that met the requirements of Conn. Gen. Stat. § 36a-785 (b) and . . . (iii) [the defendant] failed to send them within thirty days of the disposition of their vehicle, an accounting of the proceeds of the disposition."
The plaintiffs do not allege any policy or practice of delaying notice of disposition of proceeds after repossessed cars were sold. The claim that late notice constituted a violation of CUTPA, is subject to the distinction enunciated by the Connecticut Supreme Court in Jacobs v.Healey Ford-Subaru, Inc., 231 Conn. 707, 729 (1995). In that case, the Supreme Court found that inadvertent failures to provide statutorily required notices in timely fashion not part of a policy or practice, did not violate CUTPA. This distinction creates the need to determine, as to each instance of a tardy accounting, whether the lateness was the product of a business practice or only of such inadvertent factors as temporary loss of records or sloppy document-handling. Persons who received late notice because of inadvertence may not, under Jacobs v. Healey Ford, supra, 231 Conn. 707, have a cause of action under CUTPA at all, and their claims would not therefore be typical of the claims of those who received tardy notice as part of a business practice or policy.
Without an allegation that the members of the proposed class were injured as a result of a common course of conduct or business practice by the defendant, the plaintiffs have failed to demonstrate either typically or that a class action is a superior method for adjudicating the claims of each person who may have received a late accounting of the disposition of the proceeds from the post-repossession sale of his or her vehicle by the defendant.
Conclusion
The court hereby certifies a class composed of all those Connecticut residents who purchased motor vehicles pursuant to retail installment contracts within the meaning of Conn. Gen. Stat. § 36a-770 (c)(6) or installment loan contracts within the meaning of Conn. Gen. Stat. §36a-770 (c)(7) whose vehicles were repossessed by the defendant between August 5, 1993, and October 31, 1998, and who were notified after repossession that in order to redeem their vehicle they would have to pay the accelerated balance on the contract plus repossession and storage charges. The class does not include, any person who has already brought a separate action against the defendant or who has already filed a counterclaims against the defendant alleging the same violations that are alleged herein. The class representatives shall be Maxine Boyd, Shelly Toliver and Vincent Smith, and the class claims shall be those asserted in Counts One, Six and Nine of the Third Amended Complaint, which was filed on December 29, 2000.
The motion to certify subclasses to be designated as Subclasses B, C, and D have been withdrawn. The motion to certify a subclass to be designated Subclass E is denied.
The plaintiffs shall, by June 4, 2001, file a proposed form of notice and a proposed method of giving notice to members of the certified class, along with a request for adjudication. Such notice shall include a date and method for opting out of the class. The defendant shall, by June 19, 2001, file any opposition to the proposed form and proposed method of providing notice to members of the class.
 ___________________________ BEVERLY J. HODGSON Date JUDGE of the SUPERIOR COURT