[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On approximately April 10, 1997, the plaintiff Armando A. Tavarez bought a previously owned Dodge Stealth automobile from Stephen Chevrolet-Oldsmobile in Granby. The dealership assigned the installment contract and security agreement to the defendant, Credit Acceptance Corporation ("CAC"). Tavarez made a down payment of $1700.00 and financed the remainder of the purchase price, $12,415.03. The annual percentage rate was 18.86%; the finance charge amounted to $3936.17. The total amount of anticipated payments was $18,051.20. The contract called for 36 monthly payments of $454.20 each; the first monthly payment was due May 10, 1997. The contract provided that the buyer had the rights "to redeem the property if repossessed for a default" and "to require, under certain conditions, a resale of the property if repossessed." The buyer was to be in default if he failed to perform any obligation that he agreed in the contract to perform. If the buyer was in default, the seller, "subject to any right to cure that you (the buyer) may exercise", was able to exercise remedies including: requiring the buyer to pay the balance of the amount financed, finance charges and all other agreed charges; requiring the buyer to make the car available to the seller; taking possession of the vehicle by legal process or self-help; and, where allowed by law, suing the buyer for additional amounts if the proceeds of a resale are insufficient to pay all of the amounts owed. The seller stated that by choosing one remedy it would not be deemed to waive others. The contract additionally stated that to the extent permitted by CT Page 8159 law, the seller was not required to demand payments of amounts due; give notice that payments had not been made in the appropriate amount or manner; or give notice that the seller intended to accelerate the debt on default.
As stated above, Tavarez made the initial down payment of $1700, but he did not make the first monthly payment of $454.20, which was due May 10, 1997. He testified that he had to choose between making the car payment and paying his rent, and he apparently chose to pay the rent. Included in CAC's computer records, which include summaries of telephone conversations with debtors, a "cure letter" was initiated on May 16, 1997[1], and a telephone conversation between an employee of CAC and the plaintiff was held on May 17, 1997.[2] In the course of that conversation, Tavarez told the employee that he would make the monthly payment along with a late charge by no later than May 23, 1997.[3]
According to CAC's records, which I credit, Tavarez called again on May 24, 1997.[4] Not yet having made the May payment, he said that he would mail the payment on June 6 and would send the payment due June 10 on June 20. After the conclusion of this call, the CAC employee recommended repossession. The plaintiff was not told of this recommendation. The recommendation was approved internally on May 30, 1997.
The plaintiff testified that he called on June 5, 1997, to "reconfirm" the payment arrangement by which he would pay the May payment by June 6. He said he would send the first payment by overnight mail, and he testified that the CAC employee with whom he spoke said that this arrangement was fine.
Early on June 9, 1997, a Monday, the car was repossessed. Tavarez testified that he called the police, because he thought it may have been stolen. He then called CAC and found out it had been repossessed. He was told that he could have the car back if he refinanced the car. He would have to make an additional down payment of $2500; of that amount, $500 would have to be paid forthwith. He said in the course of this telephone conversation that he thought he had more time. He asked if the amount needed to initiate refinancing could be less than $2500, and was told no. Tavarez called back later that day and advised CAC not to cash the check for $464.20 which had been sent; he said he was not going to refinance. He shortly called back, still on the same day, and said that he thought he only had to make the one payment to become current, but CAC steadfastly informed Tavarez that he need to pay $2500 to refinance the car. Tavarez stopped payment on the check which had been sent.
On June 11, 1997, CAC initiated in its system a "repo letter" by certified mail to the plaintiff. Once again, he did not respond to the CT Page 8160 post office's notice to the effect that certified mail was waiting for him.
The title to the car was subsequently received by CAC and the car was sold at auction on October 8, 1997. On April 2, 1998, a letter advising Tavarez of the proceeds of the sale was sent to him; this time he received the letter. This letter informed him as well of the amount which CAC claimed that the plaintiff owed as a deficiency.
The plaintiff has filed a complaint in three counts; the "second amended complaint" was filed without objection after the conclusion of the evidence in order to reflect information gained at trial. The first count alleged several violations of the Retail Installment Sales Financing Act, §§ 36a-770 et seq. of the General Statutes ("RISFA"); the second count alleged violations of the Part 5, Title Nine of the Uniform Commercial Code ("UCC"), §§ 42a-9-501 et seq. of the General Statutes; and the third count alleged violations of the Connecticut Unfair Trade Practices Act, §§ 42-110a et seq. of the General Statutes ("CUTPA"). The defendant answered the complaint and filed a counterclaim seeking a deficiency judgment.
A primary issue is whether the various letters satisfied the notice requirements of § 36a-785 of the General Statutes. This section is part of the Retail Instalment Sales Financing Act ("RISFA"), §§ 36a-770
et seq. of the General Statutes. The statute provides, in § 36a-785
(a), that a seller may repossess property when the buyer is in default, if the sales contract provides for the remedy of repossession. It is not disputed that the contract in the case at hand contemplated repossession if there was a default.
Subsection (b) provides that the holder of the contract[5] who has decided to repossess after a default may, not less than ten days prior to the retaking, serve upon the buyer a notice of intention to retake the property because of the default. The subsection further provides that "[t]he notice shall state the default and the period at the end of which such goods will be retaken, and shall briefly and clearly state what the retail buyer's rights under this subsection will be in case such goods are retaken." If the notice is served and the buyer does not cure the default before the day set forth in the notice, the holder may retake the goods subject to subsections (d) through (h) regarding resale and deficiencies, but without any right of redemption. Compliance with subsection (b), then, is optional, but if the holder does comply with (b), and the buyer does not cure the default in a timely manner, he loses the right to redeem the property and the holder need not comply with subsection (c). CT Page 8161
If the holder does not comply with subsection (b) regarding the pretaking notice, then he must comply with subsection (c). This provision requires that the goods be held within the state for fifteen days, during which time the buyer may redeem the property and continue in the performance of the contract as if no default had occurred if he pays the unaccelerated amount due and interest, and complies with such other conditions as the contract may require, and if he pays the costs of repossession and storage. Within three days of the repossession the holder shall furnish notice of the retaking and provide "a written statement of the unaccelerated sum due . . . and the actual and reasonable expenses of retaking and storing." Failure to furnish notice as required by this subsection results in a forfeit of the right to recover costs of retaking and storage, and the buyer may recover any actual damages suffered because of the failure to provide this notice.
Subsections (d) through (h) concern resale of the property and the attendant rights and obligations. Subsection (d) provides that if the buyer does not redeem the property, the holder must sell such goods, either at a public auction or a private sale, not less than fifteen nor more than 180 days from the date of the repossession. Another notice must be provided to the buyer: the buyer is to have at least ten days' notice of the time and place of the public auction or of the time after which a private sale may take place, and the buyer may bid if the sale is public. The proceeds of the sale, for the purpose of determining any deficiency, are deemed to be either the amount of the actual proceeds or the fair market value of the asset as determined by subsection (g), whichever is greater.
Pursuant to subsection (e), the holder is to notify the buyer of the disposition of the proceeds of the sale within thirty days of the sale. Any amount remaining after paying the expenses of the sale, expenses of repossession and storage, and the deficiency is to be paid to the buyer.
Subsection (f) allows the holder to bring a deficiency action against the buyer if the proceeds are not sufficient to meet the expenses and priorities established in subsection (e).
Subsection (g) provides that in the case of a motor vehicle with a value in excess of $2,000, the "prima facie fair market value" is determined by averaging the trade-in and retail values set forth in the National Automobile Dealers Association Used Car Guide. In a deficiency action, the prima facie fair market value may be disputed.
Subsection (h), not germane to the current dispute, provides for an election of remedies. Subsection (i) provides that if the holder fails to comply with subsections (c) through (h) after retaking the property, the CT Page 8162 buyer shall have the right to recover any actual damages and, in any event, not less than one fourth of the payments actually made under the contract.
The statutory scheme, then, contemplates a series of notices. Because RISFA is a remedial act designed to address gross disparity in bargaining power, compliance with the statutory notice provisions is mandatory.Jacobs v. Healey Ford-Subaru, Inc. 231 Conn. 707, 722-24 (1995); BarcoAuto Leasing Corp. v. House, 202 Conn. 106, 114-18 (1987); Mack FinancialCorp. v. Crossley, 209 Conn. 163, 166-67 (1988); see also Gaynor v. UnionTrust Co., 216 Conn. 458, 474-75 (1990). The primary issue for resolution of the first count, which alleges violations of RISFA, is whether the notices referred to above satisfy the requirements of § 36a-785 of the General Statutes.
As noted above, a holder who contemplates repossession as a remedy for default under the contract may, but is not required to, send a "pretaking" notice to the buyer in default pursuant to subsection (b). If the holder sends a sufficient prepossession notice, no notice pursuant to subsection (c) is required. The first issue for resolution, then, is whether the notice dated May 16, 1997, satisfies the requirements of § 36a-785 (b). The notice "shall state the default and the period at the end of which such goods will be retaken, and shall briefly and clearly state what the retail buyer's rights under this subsection will be in case such goods are retaken." The notice is to be "served", personally or by registered or certified mail, not less than "ten days prior to the retaking."
The letter in evidence (Exhibit C1) is somewhat sparse. It is dated May 16, 1997[6], and refers to a "date of original indebtedness" as April 10, 1997. It states that the "amount of original indebtedness" and "present amount of indebtedness" are both $16,351.20, which, it will be remembered, is the combined amount of the purchase price and the finance cost. It states that the "amount in default" is $454.20, which is one month's payment under the original contract. The letter then states, in its entirety:
 If you correct this default of $454.20, within 10 days from the date of this letter, your account will no longer be in default.
 If you do not make this payment within 10 days, CREDIT ACCEPTANCE CORPORATION may exercise its right against you under the law and repossess the 1991 Dodge. CT Page 8163
 Default is failure to make a payment within 10 days of the time required by the agreement.
 If your vehicle is repossessed, if you want it back, you will be required to pay any repossession and storage expense plus:
 (MD) the amount in default. (CT) the balance of the account. If you have any questions concerning this notice, please call or write us.
When one juxtaposes the contents of the May 16 letter with the requirements of § 36a-785 (b), one has difficulty finding compliance. Subsection (b) requires a statement of the default, and this appears to be done, because the "amount of default" is clearly stated.[7]
The notice also states that if the payment is not made "within ten days", presumably meaning, in the context of this letter, by no later than May 26, the vehicle may be repossessed. The rather clear implication is that the plaintiff was extended a ten-day period from the time of the writing of the letter in which to cure the default by paying $454.20. Although the language could have been more crisp, it is clear enough to satisfy the requirement of subsection (b) that "the period at the end of which such goods will be retaken" be stated.
The May 16 letter does not, however, "briefly and clearly state what the retail buyer's rights under this subsection will be in case such goods are retaken." The letter does state that if the car is repossessed, the buyer can redeem by paying repossession and storage expenses in addition to "the balance of the account." A right to post-repossession redemption by paying an accelerated amount apparently is not required to be included in any notice; see Velazquez v. MarineMidland Automotive Financial Corporation, 24 Conn. App. 455, 462-63
(1991); Gaynor v. Union Trust Company, supra, 472-74; and is clearly not required by subsections (d) through (h) of § 36a-785.[8] A subsection (b) notice does require notice of post-repossession rights "under this subsection". Those rights, while not specifically delineated in subsection (b), must be those referred to in the final sentence of subsection (b), which states that "[i]f the notice is so served and the buyer does not perform the conditions and provisions as to which he is in default before the day set for retaking, the holder of the contract may retake said goods and hold such subject to the provisions of subsections (d), (e), (f), (g) and (h) regarding resale, but without any right of redemption." In order to comply with the requirements of a subsection (b) notice, then, a holder must clearly state the buyer's rights in the event of a repossession and resale; these rights include the right to be CT Page 8164 informed of the sale, and, later, of the proceeds of the sale; the right to have fair market value determined pursuant to subsection (g), and so forth. It will serve no useful purpose to attempt to suggest what specifically would constitute compliance with subsection (b) in this regard; in this context, it is sufficient to note that no mention of rights following repossession and resale under subsection (b) were stated in the May 16 letter. The letter, then, did not comply with subsection (b).[9]
The defendant CAC claims that even if the May 16 letter did not comply with § 36a-785 (b) of the General Statutes, the June 11 letter (Exhibit B1) satisfied the requirements of § 36a-785 (c) and, therefore, no harm was done. It is true that a buyer has the option of complying with either (b) or (c)[10] and need not comply with both. As noted above, if a holder chooses not to comply with subsection (b), he must within three days of the retaking notify the buyer that he is holding the goods for fifteen days, during which time the buyer may redeem by paying the unaccelerated amount due plus interest, along with storage and repossession costs. Exhibit B1 clearly does not comply with subsection (c) because, at a minimum, there is no statement of the unaccelerated amount due. An apparently similar statement, generated by the same party, was found to be lacking in Credit Acceptance Corporationv. Tyson, 1999 Ct. Sup. 9141 (Blue, J.) (1999). Exhibit B1 appears to be more of an attempt to comply with subsection (d), regarding the requirement that notice of sale be sent, than it is compliance with (c).[11]
The notice of the proceeds of the sale, Exhibit 2, also fails to comply with the requirements of RISFA. Section 36a-785 (e) requires that a written statement itemizing the proceeds of the sale be sent to the buyer within thirty days of the sale. The notice in this case was sent almost six months after the sale.
The defendant asserts that because the plaintiff did not pick up Exhibits B1 and C1 from the postal service, CAC's failure to provide proper notice was harmless. The difficulty with this argument is that RISFA is remedial legislation to be strictly construed, and compliance with the statutory requirements is mandatory. Gaynor, supra, 474-75;Jacobs, supra, 722; Mack Financial, supra, 166-67. It is clear that if proper notice is sent, it doesn't matter whether it was actually received. Elm Buick Company, Inc. v. Moore, 150 Conn. 631, 634-35
(1963). The legislature has determined that certain notices are to be sent; if notices in compliance are not sent, then RISFA has been violated.
The next question is what damages are available to the plaintiff for CT Page 8165 the RISFA violations. The defendant argues that if subsection (c) was violated, then the only available recourse is an inability of the holder to collect storage and repossession costs or actual damages suffered, instead of the more expansive damages provided for in subsection (i). The defendant finds some support in Gaynor, supra. There, the holder sent a letter complying with subsection (c) in all respects except it inadvertently was incorrect in its estimate of storage and repossession costs, although it apparently made a good faith effort in that regard. The court held that "[f]or inadvertent misstatements, such as occurred in this case, we are persuaded that the controlling provision is not the generally applicable sanction provided in [§ 36a-785 (i)] but is rather the specifically applicable sanction contained in [§ 36a-785
(c)]." Gaynor, supra, at 476 (emphasis added). The case at hand is considerably different from Gaynor: in that case, the only deviation from the statute was a minor inadvertently erroneous statement of costs, which statement had been derived from previous experience. The remedy was deemed appropriate on the facts of that case. In our case, violations of considerably greater import occurred, and, as noted above, the RISFA violations were not limited to subsection (c).
The defendant also cites a Superior Court case which found that in order for subsection (i) damages to be imposed, violations of each and every subsection listed in (i) must have been found.[12] I respectfully disagree with that decision: I believe that the legislature did not intend the sentence to require violations of every provision in order for damages to be assessed after repossession. It would have been bizarre for the legislature to have required, for example, a violation of the election of remedies provisions, subsection (h), in order for damages to be awarded against a holder who entirely disregarded all notice provisions but who properly elected a remedy. The common sense interpretation of the sentence provides, in my opinion, for the imposition of the presumed damages when a substantial post-taking violation has occurred.
As to the first count, then, judgment may enter for the plaintiff I do not find proved any actual damages arising out of the RISFA violations. The plaintiff testified about loss of income as a result of the repossession, but I do not find that violations of RISFA caused the repossession, nor do I find proved by a preponderance of the evidence the damages suggested by the plaintiff I do award, however, one fourth of the actual payments made, which is $425.00. Because the underlying contract called for attorney's fees if the defendant were successful (and the defendant has counterclaimed in this case), reasonable attorney's fees are awarded to the plaintiff, pursuant to § 42-150bb of the General Statutes. Section 42-150bb provides that, in an action regarding a contract or lease in which a consumer is a party, an attorney's fee shall CT Page 8166 be awarded to the consumer if the contract provides for attorney's fees in favor of a successful commercial party. The size of the award of attorney's fees to the consumer "shall be based as far as practicable upon the terms governing the size of the fee for the commercial party." Because the fee is limited to not more than 15% in favor of the commercial party; see § 42-150aa(b) of the General Statutes; the fee to the prevailing consumer is similarly capped. As an attorney's fee for prevailing on the first count of the complaint, then, the plaintiff is entitled to $63.75.
In the second count of his complaint, the plaintiff alleges that CAC violated the Uniform Commercial Code. In his Second Amended Complaint dated April 18, 2000, he alleged that CAC failed to extend to the plaintiff the right to redeem the vehicle for the unaccelerated amount due, in violation of § 42a-9-501, and claims damages calculated pursuant to § 42-9-507, [42a-9-507], (1). In his post-trial brief, he expands somewhat on the allegations: he claims that the statutory language to the effect that the debtor after default has the rights and remedies of Part 5 of Title 9 of the UCC and those provided in the security agreement; see § 42a-9-501 (2); has been violated. Under the agreement (Exhibit 1), the plaintiff had the right to redeem the property if it was repossessed for a default, and it was stated that the seller's right to repossess was subject to the buyer's right to cure. The plaintiff claims that because of deficiencies in notice and the telephone conversations with agents or employees of CAC, he was in effect not accorded his rights to cure or to redeem.
I have read the authority provided by both parties, and more, and I find no authority precisely on point. It seems clear that a violation of RISFA may be, but is not necessarily, a violation of the UCC; the provisions are to be considered independently. See, in general, Jacobsv. Healey Ford-Subaru, Inc., supra. A technical violation of RISFA, which, as noted above, is remedial and mandatory, may or may not violate the more general considerations of the UCC.
It is clear, and probably undisputed, that the plaintiff had a right to cure a default and a right to redeem if the property were repossessed; these rights were established both by the UCC and the contract between the parties. The specific contractual rights which the plaintiff claims were violated by CAC are the right to redeem if the car were repossessed and the right not to have the car repossessed if the plaintiff's right to cure were exercised. Neither of these specific rights were violated. CAC did not violated the plaintiff's right to redeem the property if repossessed: the UCC (as opposed to RISFA) does not require specific notice in that regard, and the plaintiff never tendered the amount due CT Page 8167 under the contract. See § 42a-9-506 of the General Statutes; see alsoGaynor, supra, 470; Velazquez v. Marine Midland Automotive FinancialCorp., 24 Conn. App. 455, 462-63 (19). The plaintiff, then, did not prove that any right to redeem under the UCC was abridged by the defendant.
The second contractual right which the plaintiff claims was violated by CAC involves the repossession of the property. The contract stated that the defendant was entitled to repossess the car if the plaintiff was in default, subject to any right to cure that the plaintiff may exercise. There is no doubt that the plaintiff was in default. The property was repossessed subject to a right to cure: Exhibit C1, referred to extensively above, stated that the default could be cured be paying the specified amount in default. It is of no moment, in this context, that the plaintiff failed to pick up his mail; see Elm Buick Co. v. Moore,150 Conn. 631, 634-35 (1963); nor that this notice failed to satisfy RISFA for other reasons. Further, the UCC right to cure; see §42a-9-506; was never exercised by the plaintiff
The plaintiff also claims that the defendant violated § 42a-9-504
by failing to act in a commercially reasonable manner. This claim was not pleaded in the second amended complaint, and thus is not considered.
I find, then, that the allegations of the second count have not been proved.
The third count alleges that the defendant violated the Connecticut Unfair Trade Practices Act ("CUTPA"), §§ 42-110a et seq. of the General Statutes, by charging storage and repossession fees in violation of § 36a-785 (c), improperly accelerating the amount due on the contract without complying with § 36a-785 (c), not providing the plaintiff with the opportunity to redeem the car for the unaccelerated amount due following repossession, and not sending the plaintiff notice of the proceeds of the sale within thirty days of the resale, in violation of § 36a-785 (e) of the General Statutes. Claiming that he suffered an ascertainable loss, the plaintiff claims damages pursuant to § 42-110g of the General Statutes, including actual damages, punitive damages and attorney fees.
A violation of RISFA may be, but is not necessarily, a violation of CUTPA. Jacobs v. Healey Ford-Subaru, Inc., supra, 725. Considerations used to determine whether a trade practice is unfair or deceptive include whether it offends public policy as established by statute, common law or otherwise, even if it is not specifically unlawful, whether it is immoral, unethical, oppressive or unscrupulous, and whether it causes substantial injury to consumers. All three criteria need not be met in order for a violation to be found. If one criterion is met to a CT Page 8168 sufficient degree, CUTPA will have been violated. A-G Foods v. PepperidgeFarms, Inc., 216 Conn. 200, 215 (1990).
In Healey, supra, no CUTPA violations were found despite the defendant's having sent no notices regarding the repossession and resale. The violations of RISFA and the UCC were found to be the result of sloppy and inadvertent practices rather than deliberate actions. The plaintiff had turned the vehicle in voluntarily and the defendant lost its records. The situation at hand is somewhat different: though there can be no doubt that the plaintiff defaulted on his payment obligation, the notices in this case showed a pattern of noncompliance with RISFA, which, in combination with the oral representations made to the plaintiff on the telephone, amounted to unfair and oppressive practices. For example, after the Exhibit C1, which did not comply with § 36a-785
(b), was sent, the plaintiff was specifically told that he would not be reinstated upon receipt of, in effect, the unaccelerated amount due (the cost of repossession would not have been staggering, and storage would have been minimal on the first day); and Exhibit B1 mentioned only the unaccelerated amount due. RISFA contemplates that if insufficient notice is sent to satisfy subsection (b), the buyer shall be notified that he can redeem the property for the unaccelerated amount due within fifteen days of the repossession. Each of the notices was dated in a somewhat deceptive manner, in that the letters were dated several days before they were mailed. When time limits are calculated using the date of the letter as one terminal date, each time limit is shortened when two or three days elapse before mailing.[13] The time limitation for sending notice of the proceeds of the sale was exceeded by months. The plaintiff sustained an ascertainable loss by losing his car: had the defendant recognized its obligations, following a faulty subsection (b) notice, and accepted payment for the unaccelerated amount due, the plaintiff would have had his car back within several days and would not have faced the prospect of a substantial deficiency judgment. In sum, as to the CUTPA claim, I do not find that paragraph 28a constitutes a violation, because the failure properly to charge or to state storage and repossession fees is not in the context deceptive. Compare Gaynor, supra. I do find that paragraphs 28b and 28c are proved, in that the defendant's accelerating the amount due in light of the faulty subsection (b) notice and improperly advising the plaintiff were oppressive to the consumer and misstated the law. I do not find by itself that the allegations of 28d constitute a deceptive practice.
In the circumstances, I award punitive damages of $2,000. I find no actual proved damages arising from the CUTPA violation, and, in view of attorney fees arising from the other counts, I do not award attorney fees. On the complaint, then, the plaintiff is entitled to recover damages pursuant to § 36a-785 (i) in the amount of $425.00, punitive CT Page 8169 damages of $2,000, and attorney's fees of $63.75.
The defendant has claimed a deficiency judgment in its counterclaim; the defendant claims that after allowances are made for payments made, and crediting future finance payments, the plaintiff owes the sum of $7428, plus additional interest. It is black letter law that a holder of a contract who has violated RISFA, at least in any substantial way, may not recover a deficiency judgment. See, e.g., Barco Auto Leasing v.House, 202 Conn. 106 (1987); Auto Acceptance Corp. v. Veneziano, 2 Conn. Cir. 708, 713 (1964); Mack Financial Corp. v. Crossley, 209 Conn. 163,166-67 (1988). Judgment may enter for the plaintiff on the counterclaim.
Finally, the plaintiff claims attorney's fees for successfully defending the counterclaim, to which he is entitled pursuant to §42-150bb of the General Statutes. So far as practicable, the amount to be awarded is the same as would be awarded to the plaintiff had the plaintiff prevailed. Ordinarily, the attorney's fee would have been limited to 15% of the amount recovered. Because the amount of $7428 was claimed as a deficiency judgment, I award the amount of $1114.20 as additional attorney's fees to the plaintiff
Judgment shall enter accordingly.
 ___________________, J. Beach