791 S.E.2d 546

**Otha DELANEY, Appellant,**

v.

**FIRST FINANCIAL OF CHARLESTON, INC., Respondent.**

**Appellate Case No. 2014–000824**
**Opinion No. 5442**
Court of Appeals of South Carolina.
Submitted March 1, 2016
Filed September 28, 2016
Rehearing Denied February 16, 2017

Philip L. Fairbanks, of Beaufort, for Appellant.

Stephen L. Brown, Russell G. Hines, and Perry M. Buckner, IV, all of Young Clement Rivers, of Charleston, for Respondent.

SHORT, J.:

Otha Delaney appeals the trial court's grant of First Financial of Charleston, Inc.'s motion to dismiss his class action complaint for damages and equitable relief under the Uniform Commercial Code (UCC), alleging the court erred in (1) dismissing the complaint as time-barred by applying the incorrect statute of limitations,[1] and (2) determining the date the statute of limitations began to run. We affirm.

On October 12, 2007, Delaney entered into a Retail Installment Contract (the Contract) to purchase a truck from Coliseum Motors. The Contract was assigned to First Financial, making it a secured party under the UCC. After Delaney failed to make payments, First Financial repossessed the vehicle. On May 2, 2008, First Financial sent Delaney a "Notice of Private Sale of Collateral" (notice of sale) advising Delaney of its intention to sell the vehicle. On December 15, 2008, First Financial sold the vehicle.

---

1. We combine Delaney's second and third issues and address them as the first issue.

On October 4, 2011, Delaney, as a putative member of a class, filed this class action, alleging (1) the notice of sale was insufficient under the UCC, and (2) he was entitled to relief under section 36–9–625 of the South Carolina Code (2003) (providing remedies for a secured party's failure to comply with the UCC). Delaney sought recovery on behalf of the class members.

First Financial moved to dismiss, arguing Delaney's claim was barred under the one-year statute of limitations applicable for statutory penalties set forth in South Carolina Code § 15–3–570 (2005) (providing a one-year statute of limitations for actions based on a statute for a penalty). Delaney filed a response to the motion to dismiss, arguing the claim was not a statutory penalty, but it was a remedial claim for damages under section 36–9–625. Delaney argued that because the claim is remedial, the UCC's six-year statute of limitations in section 36–2–725(1) (2003) of the South Carolina Code governing breaches of contract for the sale of goods applied. In the alternative, Delaney argued if the recovery is a penalty rather than a compensable remedy, the action is governed by the three-year statute of limitations provided in South Carolina Code section 15–3–540(2) (2005) (applying to "[a]n action upon a statute for a penalty or forfeiture when the action is given to the party aggrieved or to such party and the State, except when the statute imposing it prescribes a different limitation").

At a hearing on its motion to dismiss, First Financial argued the action was for a penalty because no contract was alleged to have been breached; there was no plea for compensatory damages; the complaint did not allege a tort; and the plea for relief consisted of the finance charge and ten percent of the principal amount under the Contract. According to First Financial, such a plea was governed by the one-year statute of limitations provided for in section 15–3–570, which would be triggered by the "commission of the offense." First Financial also argued Delaney's claim was time-barred under the three-year statute of limitations, which was triggered by the issuance of the notice of sale.

Delaney argued neither the one-year nor the three-year statute of limitations applied, and even if the three-year

statute of limitations in section 15–3–540(2) applied, the time had not expired at the time of the filing because the statute would have been triggered "not when the letter [was] received[, but] . . . only when the collateral was disposed of." Delaney maintained that setting minimum statutory damages of ten percent of the contract plus finance charges ensures compliance by creditors and "that[,] in and of itself doesn't turn it into a penalty because it is clearly a substitute for actual damages."

In an order filed April 30, 2013, the trial court granted the motion to dismiss. The court found Delaney's sole cause of action was a statutory penalty because it requested the finance charge and ten percent of the principal amount of the obligation, which is the statutorily-mandated award for a violation of the notice provision pursuant to section 36–9–625(c)(2). Noting the Official Comment 4 to section 36–9–625(c)(2), which provides the specific relief is to be awarded "regardless of any injury that may have resulted[,]" the court found "this fixed formula is not remedial in nature but rather serves the purpose of imposing automatic liability for 'every noncompliance.'" The trial court noted our supreme court has interpreted the same provision as a statutory penalty in several cases, and it further noted other courts have similarly classified the statutory award based on the uniform UCC model statute, upon which South Carolina based its code.

The court next rejected Delaney's argument that section 36–2–725(1) applied, which provides a six-year limitations period for a breach of contract for the sale of goods under the UCC. The court noted Delaney did not plead breach of contract; thus, section 36–2–725(1) did not apply. The court found the case concerned the sufficiency of notice prior to the disposition of collateral; thus, the case dealt "entirely with Article 9's provisions concerning secured transactions. Article 2's provisions pertaining to the sale of goods [were] wholly irrelevant." The court also found general rules of statutory construction prevented the application of the six-year limitations period. The court found the "controlling limitations period should be either S.C. Code Ann. § 15–3–570 or § 15–3–540(2), respectively one or three years." The court noted general rules of statutory construction require a specific statute to prevail over a more general statute, and because

Delaney's desired recovery was a statutory penalty, sections 15-3-570 and 15-3-540(2) spoke "more directly to the actual allegations in this lawsuit."

Finally, the court found Delaney's complaint was time-barred under either section 15-3-570 or 15-3-540(2). The court found "[w]hile either statute might be reasonably applied to this matter, the Court need not decide this inquiry as [Delaney's] cause of action accrued upon receipt of the alleged noncompliant Notice of Sale and either statute would therefore serve as a bar to ... recovery." As to section 15-3-570,[2] the statute specifically states the commission of the offense serves as the date of accrual. The court found the statute began to run in May 2008 and expired in May 2009.

As to section 15-3-540(2),[3] the court noted the statute did not specifically delineate a date of accrual, and it found "the alleged commission of the offense should similarly serve as the commencement of the three year statute of limitations." The court continued,

> Unlike an action for actual or compensatory damages, [Delaney's] action for a penalty focuses on a specific act of non-compliance ... that awards automatic relief. The right to bring the action and thus the proper date of accrual should be determined by the date on which that alleged noncompliance occurred. However, this date of accrual would also coincide with the date on which [Delaney] either knew or should have known that a violation had occurred.
>
> Furthermore, I find that the legislature intended [§§ ] 15-3-570 and 15-3-540 to have similar dates of accrual. Both govern actions for a statutory penalty and are nearly identical in language but for the length of the limitations period. Given that the legislature specifically enumerated the date of accrual for penalty actions under § 15-3-570 to

---

**2.** "An action upon a statute for a penalty or forfeiture given, in whole or in part, to any person who will prosecute for it must be commenced within one year after the commission of the offense." S.C. Code Ann. § 15-3-570 (2005).

**3.** "Within three years ...: (2) An action upon a statute for a penalty or forfeiture when the action is given to the party aggrieved or to such party and the State, except when the statute imposing it prescribes a different limitation." S.C. Code Ann. § 15-3-540(2).

be the date of the commission of the offense, this Court sees no logical purpose in creating an alternative date of accrual for penalty actions under § 15–3–540(2).

The court granted First Financial's motion to dismiss. After a hearing, the court denied Delaney's motion for reconsideration. This appeal followed.

## ISSUES

I.   Did the trial court err in applying the statute of limitations?

II.   Did the trial court err in finding the action accrued at the time the notice of sale was received rather than at the time First Financial disposed of the collateral?

## STANDARD OF REVIEW

"On appeal from the dismissal of a case pursuant to Rule 12(b)(6), an appellate court applies the same standard of review as the trial court." *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009). The appellate court is required to construe the complaint in a light most favorable to the non-movant and determine if the facts alleged and reasonably deducible inferences in the complaint would entitle the plaintiff to relief on any theory of the case. *Id.* The court may sustain the dismissal when the facts alleged in the complaint do not support relief under any theory of law. *Flateau v. Harrelson*, 355 S.C. 197, 202, 584 S.E.2d 413, 416 (Ct. App. 2003).

## LAW/ANALYSIS

### I.   Applicable Statutes of Limitations

■   Delaney argues the trial court erred in finding the six-year statute of limitations in section 36–2–725 did not apply and in finding Delaney's action barred by either the limitations period provided by section 15–3–540(2) or by section 15–3–570. We disagree.

In this case, Delaney alleged he was entitled to the statutorily-mandated award for a violation of the notice provision pursuant to section 36–9–625(c)(2) due to First Financial's insufficient notice of sale. Section 36–9–625, found in Article 9 of the UCC, establishes remedies for a secured party's failure to comply with Article 9, providing the following:

(a) If it is established that a secured party is not proceeding in accordance with this chapter, a court may order or restrain collection, enforcement, or disposition of collateral on appropriate terms and conditions.

\*\*\*

[c](2) if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus ten percent of the principal amount of the obligation or the time-price differential plus ten percent of the cash price.

S.C. Code Ann. § 36–9–625 (2003). "Article 9 of the U.C.C. does not now nor has it ever included a statute of limitations." Richard H. Nowka, *The Secured Party Fiddles While the Article 2 Statute of Limitations Clock Ticks—Why the Article 2 Statute of Limitations Should Not Apply to Deficiency Actions*, 7 Fla. St. U. Bus. Rev. 1, 2 n.4 (2008). Thus, Delaney argues the statute of limitations in Article 2 of the UCC, section 36–2–725(1) applies, providing six years. We disagree.

First, Delaney did not allege a breach of contract. Rather, Delaney alleged the violation of the notice of sale requirements, and his prayer for relief requested the statutory penalty of the finance charge and ten percent of the principal amount of the obligation under section 36–9–625(c)(2). Thus, section 36–2–725(1) did not apply because it provides as follows: "An action for breach of any contract for sale must be commenced within six years after the cause of action has accrued." S.C. Code Ann. § 36–2–725(1) (2003). Because Delaney did not allege a breach of contract, we agree section 36–2–725(1) did not apply. Instead, we look to Title 15 governing civil remedies.

Sections 15–3–540 and –570 provide statutes of limitations for actions upon statutes for a penalty. *See* S.C. Code Ann. § 15–3–540(2) (2005) (providing a three-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture"); S.C. Code Ann. § 15–3–570 (2005) (establishing a one-year statute of limitations for "[a]n action upon a statute for' a penalty or forfeiture given, in whole or in part, to any person who will prosecute for it must be commenced within one year

after the commission of the offense"). Like the trial court, we find the controlling limitations period is either section 15–3–570 or section 15–3–540(2), respectively one or three years, because Delaney sought a statutory penalty.

■ "As a general principle, the legislature has the authority to provide civil penalties to enforce observance of a legislative policy." *S.C. Dep't of Health & Envtl. Control v. Kennedy*, 289 S.C. 73, 76, 344 S.E.2d 859, 861 (Ct. App. 1986). A statutory penalty is defined as a penalty "an individual is allowed to recover against a wrongdoer as satisfaction for wrong or injury suffered, without reference to actual damage sustained." *Black's Law Dictionary* 1412 (6th ed. 1990). Although not addressing the statute of limitations issue, at least three South Carolina Supreme Court cases have identified the "damages" in section 36–9–625(c)(2) as a statutory penalty.

Citing the former version of section 36–9–625(c)(2), the supreme court in *Crane v. Citicorp National Services, Inc.*, 313 S.C. 70, 72, 437 S.E.2d 50, 51–52 (1993) (superseded by statute on other grounds), addressed whether co-obligors, who did not have title or right to possession of a mobile home, could recover under the penalty provision of the UCC for the creditor's failure to comply with the notice requirements. The court found the Cranes were entitled to notice. *Id.* at 74, 437 S.E.2d at 53. The court continued as follows:

> If the notice provision relates to the obligation, then it would seem logical that the penalty provision for breach of the notice requirements must also be related to the obligation, and therefore, applicable to co-obligators of consumer goods security agreements. Additionally, the statutory penalty is evidence of the legislature's recognition that the small amount of compensatory damages that may be proven in a consumer goods repossession and sale would be insufficient to ensure creditor compliance with the Code's provisions.

*Id.* at 74–75, 437 S.E.2d at 53.

In *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 375, 534 S.E.2d 688, 690 (2000), Brockbank sued Best Capital Corp. after the repossession and sale of his mobile home, alleging, among other things, a violation of Article 9's notice provision. Best Capital admitted it had not sent notice of the sale, but it

argued Article 9 did not apply to the parties' agreement because there was not a security interest. *Id.* at 377, 534 S.E.2d at 691. The court found notice was required, and stated "[i]f a secured party fails to give the required notice, a debtor may seek to recover the statutory penalty under Article 9." *Id.* at 385, 534 S.E.2d at 695 (noting the former version of section 36–9–625(c)(2), section 36–9–507(1), which embodies nearly identical language as the current version); *id.* at 384, 534 S.E.2d at 694 (concluding "the outcome in this case is largely dictated by *Crane*").

More recently, in *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 373, 595 S.E.2d 461, 463 (2004), Mr. and Mrs. Singleton filed an action based in part on the UCC, claiming Stokes Motors, Inc. failed to notify them of its intent to sell the Singletons' repossessed vehicle. Citing the former version of section 36–9–625(c)(2), the court in *Singleton* referred to the statute's "penalty" provision in finding both Singletons were entitled to recover because both were entitled to notice. *Id.* at 378, 595 S.E.2d at 466.[4]

We find no merit to Delaney's argument that our supreme court's references to the statutory penalty in these cases is the result of "loose language" and "unconsidered dictim (sic)" and the court interchangeably used the terms "compensatory damages" and "penalty" in its opinions. Based on the definition of a penalty and the cases referring to the mandatory, predetermined amount of "damages" for failure to comply with the notice of sale requirements, we find the remedy Delaney sought in section 36–9–625(c)(2) was a penalty, and either section 15–3–570 or section 15–3–540(2) applied.

First Financial sent the notice of sale on May 2, 2008, and sold the vehicle on December 15, 2008. Delaney filed this action in October 2011. Under section 15–3–570, providing a one-year statute of limitations, Delaney's action is clearly barred. Under section 15–3–540(2), providing a three-year statute of limitations, whether the action is barred depends on when the action accrued.

---

4. The court noted that under the revision of 2001, a secured party's liability under section 36–9–625(c)(2) is limited to one penalty "with respect to any one secured transaction." *Id.*

## II.  Date of Accrual

██  Delaney argues the trial court erred in finding the cause of action accrued when the notice of sale was received rather than on the date of the sale of the collateral. We disagree.

Under the three-year statute of limitations, Delaney's complaint was untimely filed unless the accrual date is the date First Financial sold the vehicle rather than the date of the notice of sale. However, like the trial court, we need not decide whether section 15–3–570 or section 15–3–540(2) applied because we find the accrual date is the date the notice of sale was received, and Delaney failed to timely serve and file his complaint under either statute of limitations.

As to section 15–3–570, the statute specifically provides the action "must be commenced within one year after the commission of the offense." S.C. Code Ann. § 15–3–570 (2005). The offense alleged in this case is insufficient notice of sale. As noted by the trial court, "this date ... coincide[s] with the date on which [Delaney] either knew or should have known that a violation had occurred."

██  Regarding section 15–3–540(2), the statute is silent as to a date of accrual. To interpret this section for the present case, we must apply the rules of statutory construction. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins v. Bruno Yacht Sales, Inc.*, 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it reasonably can be discovered in the language used, and the language must be construed in the light of the intended purpose of the statute." *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck (VIN # JM2UF1132N0294812)*, 330 S.C. 371, 375, 498 S.E.2d 894, 896 (Ct. App. 1998). "Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers." *Corbin v. Carlin*, 366 S.C. 187, 193, 620 S.E.2d 745, 749 (Ct. App. 2005) (quoting *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 624, 503 S.E.2d 471, 478 (1998)).

Delaney's complaint alleges violations of the notice required prior to the disposition of goods in a consumer goods transac-

tion. *See* S.C. Code Ann. § 36–9–611(b) (2003) (requiring notification prior to disposition of collateral); S.C. Code Ann. § 36–9–614 (2003) (providing specific requirements for a notification). His right to recovery for a violation of the required notice arises under section 36–9–625(c)(2). The cause of action depends on a specific act of non-compliance by the creditor. Even under the discovery rule, the date of the notice of sale would be the date of discovery of the cause of action for a failure to comply with the UCC regarding the notice. We find the legislature did not intend to impose a different date for the statute of limitation to accrue. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute.").

The dissent maintains section 15–3–540(2)'s three-year statute of limitations did not begin to run until First Financial disposed of the collateral in December 2008 because a secured party must provide reasonable notice of sale only if it disposes of the collateral. According to the dissent, "the only way a secured party can fail to comply with section 36–9–611(b) is by failing to give reasonable notice AND disposing of the collateral." Further, the dissent maintains if the secured party never disposes of the collateral, it never has to provide notice under section 36–9–611(b), and if a secured party sends unreasonable notice to a debtor but subsequently fails to dispose of the collateral, it has not failed to comply with section 36–9–611(b). In support of its position that a secured party must provide reasonable notice only if it disposes of the collateral, the dissent cites Official Comment eight to section 36–9–611. Comment eight states, "Nothing in this Article prevents a secured party from electing not to conduct a disposition after sending a notification. Nor does this Article prevent a secured party from electing to send a revised notification if its plans for disposition change." We respectfully disagree with the dissent's interpretation of section 36–9–611(b) and determination of the date the three-year statute of limitations began to run.

We believe the statute of limitations begins to run when the secured party sends noncompliant notice to the debtor, not when the secured party disposes of the collateral. Initially, we note section 36–9–625 provides several remedies for noncom-

pliance with the notice requirement. Among them, the statute provides, "[i]f it is established that a secured party is not proceeding in accordance with this chapter, a court may order or restrain ... disposition of collateral on appropriate terms and conditions." § 36–9–625(a). It is clear a party must be able to state a cause of action in order to request a court restrain disposition of the collateral. Therefore, if Delaney could have asked a court to restrain disposition of his collateral, his cause of action must have arisen upon his receipt of the noncompliant notice. *See Great Games, Inc. v. S.C. Dep't of Revenue*, 339 S.C. 79, 84, 529 S.E.2d 6, 8 (2000) ("Statutes should be construed in light of their intended purposes, and in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole.").

Further, we believe the Official Comments to section 36–9–611 and 36–9–625(c)(2) supports our conclusions. First, Comment two to section 36–9–611 provides, "This Section requires a secured party who *wishes* to dispose of collateral under Section 9–610 to send 'a reasonable authenticated notification of disposition' to specified interested persons, subject to certain exceptions." (emphasis added). Comment two does not state that the secured party must actually dispose of the collateral to be required to send reasonable notification; it simply requires that the secured party "wish" to dispose of the collateral. Based on our reading of Comments two and eight to section 36–9–611, we believe after the secured party gives notice, the secured party can elect not to dispose of the property; however, if the secured party initially wishes to dispose of the property, the secured party must provide appropriate notice. Therefore, we do not believe that disposition of the collateral is a prerequisite to being penalized for failing to give reasonable notice.

In addition, Official Comment four to the penalty provision, section 36–9–625(c)(2), states the penalty "is designed to ensure that every noncompliance with the requirements of Part 6 [§§ 36–9–601 to –629 (2003 & Supp. 2015) ] in a consumer-goods transaction results in liability, regardless of any injury that may have resulted." Because an injury is not required for a secured party to be liable for failing to comply with the notice requirement, the statute of limitations can begin to run

before the secured party injures the debtor by disposing of the collateral in a commercially unreasonable manner.

Accordingly, we believe section 15–3–540(2)'s three-year statute of limitations began to run in May 2008 when Respondent received the notice of sale from First Financial. *See generally Rashaw v. United Consumers Credit Union*, 685 F.3d 739, 744 (8th Cir. 2012) ("[W]e agree that these claims clearly accrued when plaintiffs received the allegedly facially deficient collateral disposition notices."); *Erdmann v. Rants*, 442 N.W.2d 441, 444 (N.D. 1989) (explaining the penalty available for failure to comply with the notice of sale requirements exists regardless of whether a commercially reasonable sale is held and regardless of whether the debtor sustained a loss).

## CONCLUSION

For the foregoing reasons, the order on appeal is

**AFFIRMED.**[5]

LOCKEMY, C.J., concurs.

THOMAS, J., concurring in part, dissenting in part:

I concur with the majority's conclusion that the statute of limitations found in section 36–2–725(1) of the South Carolina Code (2003) does not apply to Appellant's claims. However, I respectfully dissent and would reverse because a three-year statute of limitations applies to Appellant's claims and Appellant filed this action within three years of the date Respondent disposed of the collateral, which, I believe, is when the statute of limitations began to run.

Under section 15–3–540(2), the statute of limitations is three years for "[a]n action upon a statute for a penalty or forfeiture when the action is given to the party aggrieved or to such party and the State, except when the statute imposing it prescribes a different limitation." By its plain language, this section's three-year statute of limitations applies to actions seeking recovery of a statutory penalty when only the aggrieved party can bring the action for the penalty.

---

5. We decide this case without oral argument pursuant to Rule 215, SCACR.

In this case, Appellant brought his action to recover the statutory penalty found in section 36–9–625(c)(2) of the South Carolina Code (2003). This section allows only the "debtor or a secondary obligor at the time a secured party failed to comply" to recover the statutory penalty. Thus, Appellant was the only person who could have brought an action to recover the statutory penalty because he was the debtor at the time Respondent allegedly failed to provide reasonable notice of disposition of the collateral. Because Appellant, as the aggrieved party, was the only person who could have brought the action, section 15–3–540(2) provided the applicable statute of limitations. Accordingly, the statute of limitations for Appellant's action was three years.

Finding the applicable statute of limitations was three years, we must next consider when the statute began to run. I respectfully disagree with the majority's finding that the statute of limitations began to run when Respondent sent the allegedly unreasonable notice in May 2008.

Section 36–9–625(c)(2) provides "a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this part may recover" a statutory penalty for the failure to comply. The debtor can recover this penalty only if the secured party fails to comply. Under section 36–9–611(b) of the South Carolina Code (2003), "a secured party that disposes of collateral under [s]ection 36–9–610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition." Appellant's claim is that Respondent failed to comply with the notice requirement and, thus, Appellant is entitled to recover the statutory penalty found in section 36–9–625(c)(2) because of that failure to comply.

In my view, based on the plain language of section 36–9–611(b), the only way a secured party can fail to comply with section 36–9–611(b) is by failing to give reasonable notice AND disposing of the collateral. Section 36–9–611(b) requires "a secured party *that disposes of collateral*" to provide reasonable notice. (emphasis added). Based on this plain language, a secured party must provide reasonable notice only if it disposes of the collateral. If the secured party never disposes of the collateral, it never has to provide notice under section 36–9–

611(b). Thus, if a secured party sends an unreasonable notice to a debtor but subsequently fails, for whatever reason, to dispose of the collateral, it has not failed to comply with section 36–9–611(b). And the debtor who receives an unreasonable notice cannot bring an action to recover the statutory penalty if the secured party never disposed of the collateral because the statutory penalty is authorized only if the secured party failed to comply with section 36–9–611(b). As noted above, the secured party has not failed to comply with section 36–9–611(b) unless and until it disposes of the collateral.

This conclusion is supported by the official comments to section 36–9–611. Comment eight states, "Nothing in this Article prevents a secured party from electing not to conduct a disposition after sending a notification. Nor does this Article prevent a secured party from electing to send a revised notification if its plans for disposition change." Thus, this comment contemplates that a secured party may send a revised notification in order to comply with the notice requirement in section 36–9–611(b). If a secured party sent an unreasonable notice to a debtor and subsequently, but prior to disposition, sent a reasonable second notice, the secured party would be in compliance with section 36–9–611, and the debtor would not have an action to recover the statutory penalty based on a failure to comply. Additionally, comment eight contemplates that a secured party may send a notification and later decide not to dispose of the collateral in which case the secured party would not have failed to comply with section 36–9–611(b), and the debtor could not recover the statutory penalty under section 36–9–625(c)(2).

This conclusion is further supported by examination of the purpose underlying the notice requirement, which is, in part, to allow the debtor to see that the sale is conducted in a commercially reasonable manner. See Brockbank v. Best Capital Corp., 341 S.C. 372, 384, 534 S.E.2d 688, 695 (2000) ("The purpose of the notice is to allow the debtor to discharge the debt and redeem the collateral, produce another purchaser, or see that the sale is conducted in a commercially reasonable manner."). If the secured party initially sends an unreasonable notice and subsequently sends a reasonable second notice, the purpose of the notice requirement is accomplished because the debtor received a reasonable notice and can see the sale is

conducted in a commercially reasonable manner. Therefore, the purpose underlying the notice requirement supports the conclusion that the secured party has not failed to comply with section 36–9–611(b) unless and until it disposes of the collateral.

Furthermore, this conclusion is supported by examination of the purpose underlying the statutory penalty. The penalty is necessary to motivate secured parties to comply with the code's provisions. *See id.* at 385, 534 S.E.2d at 695 ("The statutory penalty is evidence of the legislature's recognition that the small amount of compensatory damages that may be proven in a consumer goods repossession and sale would be insufficient to ensure creditor compliance with the [c]ode's provisions." (brackets removed)). If the secured party initially sends an unreasonable notice and subsequently sends a reasonable second notice, imposing the statutory penalty based on the initial unreasonable notice would not serve the penalty's purpose because the secured party would have ultimately complied with the notice requirement.

The majority contends Appellant's cause of action "must have arisen upon his receipt" of the unreasonable notice because section 36–9–625(a) allows a party to request the circuit court to restrain disposition of the collateral, presumably through an injunction, if the "secured party is not proceeding in accordance with this chapter." Because section 36–9–625(c)(2) is a statutory penalty, it is available only in the specific circumstances prescribed by the statute. *See State ex rel. Callison v. Nat'l Linen Serv. Corp.*, 225 S.C. 232, 234, 81 S.E.2d 342, 343 (1954) ("The prime rule requires strict construction of a statutory provision which would work a forfeiture or inflict a penalty."); *King v. Atl. Coast Line R.R. Co.*, 86 S.C. 510, 513, 68 S.E. 769, 770 (1910) (noting a statutory penalty "is the creature of the statute, and comes into existence when all statutory conditions exist, and not otherwise"). As discussed above, the penalty in section 36–9–625(c)(2) is available only when a secured party fails to comply. Alternatively, the statute providing for the possibility of an injunction does not require a failure to comply; rather an injunction is available at any time a secured party is not proceeding in accordance with Article Nine. Because the legislature used different language in sections 36–9–625(a) and 36–9–625(c)(2)

to express when each remedy is available to a debtor, we must assume the legislature intended to draw a distinction between the two remedies. *See Gordon v. Phillips Utils., Inc.*, 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("[T]he legislature intends to accomplish something by its choice of words, and would not do a futile thing.").

Thus, the monetary penalty in section 36–9–625(c)(2) and the injunction in section 36–9–625(a) have different thresholds for applicability, and they are not necessarily available to a debtor at the same time. As a result, even if we assume, due to the possibility of an injunction, a cause of action or right arises when a secured party sends an unreasonable notice, such an assumption does not lead automatically to the conclusion, as found by the majority, that the monetary penalty is also available when a secured party sends an unreasonable notice.

Accordingly, I would find a debtor does not have a cause of action to recover the statutory penalty based on a secured party failing to provide reasonable notice as required by section 36–9–611(b) until the secured party disposes of the collateral. As a result, the statute of limitations would not begin to run until the secured party disposes of the collateral. *See Walsh v. Woods*, 358 S.C. 259, 264, 594 S.E.2d 548, 551 (Ct. App. 2004) ("In analyzing a limitations defense, the fundamental test for determining whether a cause of action has accrued is whether the party asserting the claim can maintain an action to enforce it. Thus, a particular cause of action accrues at the moment when the plaintiff has a legal right to sue on it." (citations and internal quotation marks omitted) (brackets removed)).

Here, Respondent could not have failed to comply with section 36–9–611(b) until it disposed of the collateral without providing reasonable notice, and Appellant could not have brought an action to recover the statutory penalty based on a failure to comply until Respondent disposed of the collateral. Thus, the statute of limitations began to run in December 2008 when Respondent disposed of the collateral. Appellant filed this action in October 2011, which was within the applicable three-year statute of limitations, and I would find the circuit court erred by dismissing Appellant's complaint.