******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CONNEX CREDIT UNION *v.* LYNANNE MADGIC ET AL.
## (SC 21171)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff credit union sought to recover damages from the defendants for a deficiency balance stemming from their default on a retail installment contract and security agreement for the purchase of a motor vehicle, which the plaintiff had repossessed and sold following the defendants' default. The defendants also sought to recover damages from the plaintiff in a two count counterclaim under article 9 of the Uniform Commercial Code (UCC) (§ 42a-9-675) and the Retail Installment Sales Financing Act (RISFA) (§ 36a-785), alleging, inter alia, that the plaintiff had failed to provide the defendants with adequate notice under those statutes before and after repossession and sale. The trial court granted the plaintiff's motion for summary judgment on the defendants' counterclaim, concluding that §§ 42a-9-625 and 36a-785 are penal statutes subject to the one year limitation period set forth in the statute of limitations (§ 52-585) governing actions "for any forfeiture upon any penal statute" and that the defendants' claims under §§ 42a-9-625 and 36a-785 were therefore time barred because they had accrued more than one year before the defendants filed their counterclaim. The trial court also denied the defendants' motion for class certification with respect to their counterclaim on the same ground. On appeal from the granting of the plaintiff's motion for summary judgment, the defendants claimed that the trial court had improperly applied the one year limitation period in § 52-585 to their counterclaim and, instead, should have applied either the four year limitation period set forth in article 2 of the Uniform Commercial Code (§ 42a-2-725) governing breach of sales contracts or the three year statutory (§ 52-577) limitation period governing tort actions. *Held*:

The trial court having improperly applied the one year limitation period in § 52-585 to the defendants' counterclaim under both article 9 of the UCC and RISFA, that court also improperly granted the plaintiff's motion for summary judgment, and, accordingly, this court reversed the trial court's ruling on that motion and remanded the case for further proceedings.

Because § 42a-9-625 of article 9 of the UCC is not a penal statute but, rather, a remedial statute, insofar as it recognizes a private right of action to aggrieved parties and aims to compensate debtors for losses incurred when creditors violate its provisions in enforcing their security interest in the property of debtors, this court declined to apply the limitation period in § 52-585 to the defendants' counterclaim under article 9.

This court having further determined that the basis for the defendants' counterclaim under article 9 was the plaintiff's alleged violation of the notice provisions of article 9 rather than the plaintiff's alleged breach of

its obligations under the parties' contract, the defendants' counterclaim was tortious in nature, and, accordingly, the three year limitation period for tort claims set forth in § 52-577 was the most suitable limitation period for the defendants' counterclaim under article 9.

This court concluded, consistent with its analysis of the defendants' counterclaim under article 9 of the UCC, that the three year limitation period in § 52-577 was applicable to the defendants' counterclaim under § 36a-875 of RISFA.

Specifically, because RISFA also is a remedial statute and the defendants' counterclaim under RISFA stemmed from the plaintiff's alleged failure to comply with its statutory obligations under § 36a-875 by providing the defendants with adequate notice before and after repossession and sale of the defendants' vehicle, the defendants' counterclaim under RISFA was tortious in nature.

This court directed the trial court on remand to apply the three year limitation period in § 52-577 to the defendants' counterclaim under §§ 42a-9-625 and 36a-785, to determine whether their counterclaim is timely under § 52-577 with consideration of any tolling that may have occurred as a result of certain executive orders issues during the COVID-19 pandemic, and to reconsider the defendants' motion for class certification in light of this decision.

Argued February 5—officially released April 28, 2026

*Procedural History*

Action to recover on a promissory note, and for other relief, brought to the Superior Court in the judicial district of New Haven at Meriden, where the defendants filed a counterclaim; thereafter, the case was transferred to the judicial district of Waterbury, where the court, *Pierson, J.*, denied the defendants' motion for class certification as to their counterclaim; subsequently, the court, *Pierson, J.*, granted the plaintiff's motion for summary judgment as to the defendants' counterclaim, and the defendants appealed. *Reversed*; *further proceedings*.

*Tadhg Dooley*, with whom were *Garrett A. Denniston* and *Armando Ghinaglia*, for the appellants (defendants).

*Robert C. Lubus, Jr.*, for the appellee (plaintiff).

*Opinion*

ALEXANDER, J. This appeal requires us to address whether the one year statute of limitations set forth in

General Statutes § 52-585 for "suit[s] for any forfeiture upon any penal statute" applies to claims for damages brought under article 9 of the Uniform Commercial Code (UCC), General Statutes § 42a-9-101 et seq., and the Retail Installment Sales Financing Act (RISFA), General Statutes § 36a-770 et seq. The plaintiff, Connex Credit Union, moved for summary judgment on the ground that the counterclaims in this collection action brought by the defendants, Lynanne Madgic and Brian P. Madgic, under article 9 of the UCC and RISFA are time barred. The trial court rendered summary judgment for the plaintiff on the counterclaims. The defendants now appeal and claim that the timeliness of their counterclaims is governed by the four year limitation period set forth in article 2 of the UCC; see General Statutes § 42a-2-725; or, alternatively, the three year limitation period set forth in General Statutes § 52-577. We conclude that the defendants' counterclaims under article 9 of the UCC and RISFA are governed by the three year limitation period in § 52-577. Accordingly, we reverse the decision of the trial court.

The following facts and procedural history are relevant to this appeal. On November 27, 2013, the defendants executed a retail installment contract and security agreement (contract) for the purchase of a 2011 Nissan Rogue sport utility vehicle. The contract was assigned to the plaintiff, which acquired a security interest in the defendants' vehicle. Between August and September, 2017, the plaintiff repossessed and sold the vehicle following the defendants' default on their loan payments.

On February 13, 2018, the plaintiff filed a complaint against the defendants to recover damages arising from a deficiency balance associated with their default on the contract. The defendants filed an answer, special defenses, and a two count counterclaim. The operative counterclaim alleged that the plaintiff had failed to provide the defendants with proper notice before and after the repossession and resale of their vehicle in violation of RISFA and article 9 of the UCC. Pursuant to RISFA, the

defendants sought to recover 25 percent of the amount paid under the contract as damages. See General Statutes § 36a-785 (i). The defendants also sought, pursuant to article 9, actual damages in an amount not less than the minimum provided by General Statutes § 42a-9-625 (c) (2), with an additional $500 for each failure to comply with General Statutes § 42a-9-616 (b). See General Statutes § 42a-9-625 (e) (5). The defendants also moved for certification of their counterclaims as a class action.

The plaintiff moved for summary judgment, arguing that the defendants' counterclaims under §§ 36a-785 and 42a-9-625 were time barred by § 52-585, the one year statute of limitations for "suit[s] for any forfeiture upon any penal statute . . . ." The trial court agreed and granted the plaintiff's motion for summary judgment, following its recent decision with respect to class certification in *Mutual Security Credit Union* v. *Hardy*, Docket No. X10-UWY-CV-19-6070786-S, 2024 WL 2717542 (Conn. Super. May 23, 2024). In *Mutual Security Credit Union*, the court relied on *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 723–24, 652 A.2d 496 (1995), in concluding that both § 42a-9-625 and § 36a-785 are penal statutes subject to § 52-585 because they impose statutory penalties on creditors to deter noncompliance with article 9 of the UCC and RISFA, respectively. *Mutual Security Credit Union* v. *Hardy*, supra, 2024 WL 2717542, *15–16. The trial court determined that the defendants' causes of action were time barred because they had accrued more than one year before the defendants commenced the counterclaims. The trial court denied class certification on the same ground. This appeal followed.[1]

I

The defendants first claim that the trial court improperly applied the one year limitation period in § 52-585 to their counterclaim for damages brought under §

[1] The defendants appealed from the decision of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

42a-9-625 (article 9 counterclaim). The defendants ask us to apply the four year limitation period provided in article 2 of the UCC, which governs breaches of contracts for sale. See General Statutes § 42a-2-725. Alternatively, the defendants ask us to apply the three year limitation period for tort actions provided in § 52-577. We agree with the defendants that § 52-585 does not govern their article 9 counterclaim and that § 52-577 is the applicable statute of limitations.

## A

We begin with the issue of whether the trial court properly applied § 52-585 to the defendants' article 9 counterclaim. Whether a trial court properly granted summary judgment on the ground that a claim is barred by the statute of limitations presents a question of law subject to plenary review. See, e.g., *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 310, 94 A.3d 553 (2014); *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

Article 9 of the UCC, which regulates secured transactions, was enacted in furtherance of Connecticut's public policy of protecting purchasers of consumer goods. See, e.g., *Fairfield Credit Corp.* v. *Donnelly*, 158 Conn. 543, 550–51, 264 A.2d 547 (1969). Part 6 of article 9 sets forth the duties of secured parties, including various notice requirements owed to debtors, in connection with default and enforcement in consumer goods transactions; see General Statutes § 42a-9-102 (a) (24); and provides remedies for a secured party's failure to comply with those provisions. See General Statutes § 42a-9-625.

The defendants' article 9 counterclaim concerns remedies under two subsections of § 42a-9-625. Section 42a-9-625 (c) (2) provides aggrieved debtors with minimum damages and provides in relevant part: "If the collateral is consumer goods . . . a debtor . . . at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus ten per cent of the principal

amount of the obligation or the time-price differential plus ten per cent of the cash price." Section 42a-9-625 (e) provides in relevant part: "In addition to any damages recoverable under subsection (b),[2] the debtor . . . may recover five hundred dollars in each case from a person that . . . (5) [f]ails to comply with subsection (b) of section 42a-9-616." (Footnote added.) Article 9 of the UCC does not prescribe a statute of limitations for claims brought under § 42a-9-625.

"Public policy generally supports the limitation of a cause of action in order to grant some degree of certainty to litigants. . . . Therefore, when a statute includes no express statute of limitations, we should not simply assume that there is no limitation period. Instead, we borrow the most suitable statute of limitations on the basis of the nature of the cause of action or of the right sued upon." (Citations omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 199.

As noted previously, the trial court determined that the timeliness of the article 9 counterclaim was governed by § 52-585. Under that provision, "[n]o suit for any forfeiture upon any penal statute shall be brought but within one year next after the commission of the offense." General Statutes § 52-585. The defendants argue that § 52-585 does not apply to their article 9 counterclaim because § 42a-9-625 is not a "penal" statute; it does not impose a punishment for an offense against the *state*. Rather, the defendants contend that § 42a-9-625 is a remedial statute because it provides a private right of action to aggrieved parties and aims to compensate debtors for losses incurred when creditors violate the provisions of article 9 of the UCC in enforcing their security interest in a debtor's property. We agree with the defendants.

---

[2] General Statutes § 42a-6-625 (b) provides: "Subject to subsections (c), (d), and (f), a person is liable for damages in the amount of any loss caused by a failure to comply with this article. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing."

"Penal statutes, strictly and properly, are those imposing punishment for an offense against the [s]tate . . . . The words 'penal' and 'penalty,' in their strict and primary sense, denote a punishment, whether corporal or pecuniary, imposed . . . by the [s]tate for a crime or offense against its laws." (Citation omitted.) *Plumb* v. *Griffin*, 74 Conn. 132, 134, 50 A. 1 (1901). State enforcement action is not required to render a statute penal; private citizens may have standing in some cases to bring civil actions for an offense against the state. See, e.g., *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 316–17, 417 A.2d 343 (1979). Rather, "a pecuniary sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending in like manner—as opposed to compensating a victim for his loss."[3] (Internal quotation marks omitted.) *Kokesh* v. *Securities & Exchange Commission*, 581 U.S. 455, 462, 137 S. Ct. 1635, 198 L. Ed. 2d 86 (2017).

The leading case from this court with respect to the application of what is now § 52-585 is *Plumb* v. *Griffin*, supra, 74 Conn. 132. In *Plumb*, the court considered whether a statutory cause of action allowing a plaintiff to recover treble damages from a defendant who had trespassed on the plaintiff's land by cutting and carrying away trees was governed by the one year limitation period applicable to penal statutes. Id., 134–35. The court determined that the treble damages provided by the relevant statute were compensatory, not penal, because they were "awarded to the party injured to repay him for the inconvenience and loss he is likely to have suffered [from the offending conduct]." Id., 135. The court reasoned that penal statutes do not ordinarily provide a private action against a wrongdoer; id., 134; and that "a statute [that] gives no more than a right of action to the party injured to recover increased damages . . . is not a

___

[3] Although penal statutes implement penalties or punishments for offenses against the state; see, e.g., *Plumb* v. *Griffin*, supra, 74 Conn. 134; the present case concerns only penalties that are imposed in civil proceedings rather than criminal ones.

penal statute." Id., 135. Therefore, the court concluded that the one year limitation period did not apply. Id., 134.

The principle set forth in *Plumb* that penal statutes do not limit recovery to parties who have suffered damages; id.; "has long been considered a key distinction between penal and remedial statutes." *United Banana Co.* v. *United Fruit Co.*, 172 F. Supp. 580, 585 (D. Conn. 1959); see also *Sullivan* v. *Associated Billposters & Distributors of the United States & Canada*, 6 F.2d 1000, 1009 (2d Cir. 1925). Indeed, on the few occasions when this court has deemed a civil statute penal and subject to the predecessors of § 52-585, recovery was available to *anyone* entitled to bring an action under the statute or to the state itself. See *Atwood* v. *Lockwood*, 76 Conn. 555, 557, 57 A. 279 (1904) (statute provided $20 per month forfeiture owed to any individual who brought action against delinquent estate administrator); *Wallingford* v. *Hall*, 64 Conn. 426, 429, 431, 30 A. 47 (1894) (bylaw, which court determined was penal statute, provided $25 forfeiture, owed to borough, by each violator of borough's excavation ordinance); *Wells* v. *Cooper*, 57 Conn. 52, 53–54, 17 A. 281 (1888) (statute provided $5 per month payment owed to any individual who brought action against mortgagee for failure to file certificate properly).

We are not persuaded that § 42a-9-625 is a penal statute because, like the trespass statute in *Plumb*, § 42a-9-625 does no more than provide a private cause of action to an aggrieved debtor against a secured party who fails to comply with the provisions of article 9 of the UCC. Also, like the statute in *Plumb*, § 42a-9-625 is compensatory in that subsection (b) of that statute expressly provides that a debtor may recover his or her loss, including the "loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing." General Statutes § 42a-9-625 (b). The pecuniary awards available under § 42a-9-625 (c) (2) and (e) (5), like the treble damages in *Plumb*, are additional damages and cannot, therefore, be understood to punish only an offense against the state. See *Kokesh* v. *Securities & Exchange*

*Commission*, supra, 581 U.S. 462; *Plumb* v. *Griffin*, supra, 74 Conn. 135. Courts from other jurisdictions have reached this same conclusion and did not apply the statute of limitations for penal statutes to claims brought under the applicable state codification of § 42a-9-625 of the UCC. See *Huffman* v. *Credit Union of Texas*, Docket No. 11-0022-CV-W-ODS, 2011 WL 5008309, *5 (W.D. Mo. October 20, 2011), aff'd, 758 F.3d 963 (8th Cir. 2014); *Jenkins* v. *Hyundai Motor Financing Co.*, 389 F. Supp. 2d 961, 972 (S.D. Ohio 2005); *Cubler* v. *TruMark Financial Credit Union*, 83 A.3d 235, 242 (Pa. Super. 2013). We agree with the reasoning of these courts and decline to apply § 52-585 as the statute of limitations for claims arising under § 42a-9-625.

The plaintiff argues, however, that the provision of a statutory minimum recovery, without proof of actual damages, demonstrates that § 42a-9-625 is meant to punish noncompliant creditors, rendering it penal in nature.[4] We disagree. "Statutory damages . . . are at least partly (if not principally) designed *to provide compensa-*

[4]The United States Court of Appeals for the Second Circuit recently applied § 52-585 to a claim for damages arising from a health insurance plan administrator's failure to provide the disclosure required by § 502 (c) (1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. See *Brown* v. *Rawlings Financial Services, LLC*, 868 F.3d 126, 127 (2d Cir. 2017). In *Brown*, the court determined that § 502 (c) (1) is primarily penal for three reasons: (1) a plaintiff need not demonstrate actual damages to recover, (2) the damage award is discretionary, and (3) the statute is "primarily a means to promote public objectives," rather than to compensate ERISA plan participants. Id., 129–30.

The plaintiff asks us to apply "the factors from *Brown*" to the present case. We decline to do so. This court's decisions applying § 52-585 (or its predecessors) involve statutes that do not limit the cause of action to the individual party aggrieved. See, e.g., *Atwood* v. *Lockwood*, supra, 76 Conn. 557; *Wallingford* v. *Hall*, supra, 64 Conn. 429, 431; *Wells* v. *Cooper*, supra, 57 Conn. 53–55; see also *Plumb* v. *Griffin*, supra, 74 Conn. 135 ("a statute [that] gives no more than a right of action to the party injured to recover increased damages . . . is not a penal statute"). Because the decision in *Brown* applied the one year limitation period in § 52-585 to a statute that creates a private right of action only for aggrieved plan participants, it is not consistent with the foregoing precedent.

*tion* to individuals [when] actual damages are difficult or impossible to determine." **(**Emphasis added; internal quotation marks omitted.**)** *Your Mansion Real Estate, LLC* v. *RCN Capital Funding, LLC*, 206 Conn. App. 316, 335, 261 A.3d 110, cert. denied, 339 Conn. 908, 260 A.3d 1227 (2021); see *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 203–204. "[T]he fact that [a statute] . . . provides that such damages shall not be less than a certain sum, and may be more, if proved, does not . . . transform it into a penal statute." *Brady* v. *Daly*, 175 U.S. 148, 156, 20 S. Ct. 62, 44 L. Ed. 109 (1899).

The plaintiff is correct that *one* purpose of § 42a-9-625 is to deter creditor noncompliance. See *Jacobs* v. *Healey Ford-Subaru*, supra, 231 Conn. 722–24. A statute that serves a punitive purpose is not necessarily exclusively penal in nature; it may have a remedial purpose as well. For example, although punitive damages under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., are intended to punish and deter wrongful conduct; see, e.g., *White* v. *FCW Law Offices*, 352 Conn. 718, 730, 338 A.3d 1128 (2025); "CUTPA is, on its face, a remedial statute that . . . provides for more robust remedies than those available under analogous common-law causes of action, including punitive damages . . . and attorney's fees and costs, and, in addition to damages or in lieu of damages, injunctive or other equitable relief." **(**Internal quotation marks omitted.**)** *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 317 Conn. 602, 623, 119 A.3d 1139 (2015). Thus, despite its penal features, CUTPA is, at its core, a remedial statute intended to compensate the victims of deceptive or unfair trade practices for their losses. Similarly, § 42a-9-625 is a remedial statute despite providing damages that partially serve to penalize creditors who fail to comply with its requirements.[5] See, e.g., *Jacobs* v.

[5] In *Jacobs* v. *Healey Ford-Subaru, Inc.*, supra, 231 Conn. 707, this court repeatedly described the predecessor to § 42a-9-625 as a "statutory penalty . . . ." Id., 723–24. This description does not, standing alone, render a statute penal in nature. See, e.g., *Kokesh* v. *Securities & Exchange Commission*, supra, 581 U.S. 461–62 ("[a]lthough statutes

*Healey Ford-Subaru*, supra, 724. Because we interpret "remedial statutes . . . broadly to effectuate their purpose"; *Dept. of Public Health* v. *Estrada*, 349 Conn. 223, 256, 315 A.3d 1081 (2024); we conclude that the trial court improperly applied the highly restrictive one year limitation period in § 52-585 to the defendants' article 9 counterclaim.

B

Because we conclude that the trial court improperly applied § 52-585 to the defendants' article 9 counterclaim, we must now determine which statute of limitations applies to that counterclaim. The defendants claim that either § 42a-2-725,[6] the four year statute of limitations contained in article 2 of the UCC for breaches of contracts for sale, or § 52-577,[7] the three year statute of limitations for tort actions, applies to their article 9 counterclaim.

This court's decision in *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 193, is instructive as to which statute of limitations to "borrow . . . ." Id., 199. In *Bellemare*, a mortgagor brought an action against the bank that held the mortgage on her home, seeking damages for the bank's failure to provide her with a release of mortgage pursuant to General Statutes (Rev. to 2003) § 49-8. Id., 196–97. This court was asked to determine whether the mortgagor's claim was governed by § 52-577 or General Statutes § 52-576, the six year statute of limitations for actions on simple contracts. Id., 198, 202. The court's analysis began with the distinction between claims that sound in tort and claims that sound in contract: "The duties of conduct [that] give rise

creating private causes of action against wrongdoers may appear—or even be labeled—penal, in many cases neither the liability imposed nor the remedy given is strictly penal" (internal quotation marks omitted).

[6] General Statutes § 42a-2-725 (1) provides in relevant part: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . ."

[7] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

to [a tort action] are imposed by the law, and are based primarily [on] social policy, and not necessarily [on] the will or intention of the parties. . . . [W]hen a plaintiff seeks to recover damages for the breach of a statutory duty, such an action sounds in tort." (Citation omitted; internal quotation marks omitted.) Id., 200. The court further stated: "[C]ontract actions are created to protect the interest in having promises performed. Contract obligations are imposed because of [the] conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract. . . . In short, [a]n action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." (Citation omitted; internal quotation marks omitted.) Id. The court determined that, because the defendant bank's duty to release the mortgage did not arise from the note but, rather, from General Statutes (Rev. to 2003) § 49-8 itself, § 52-577 provided the applicable limitation period. Id., 201, 204.

In applying this reasoning to the defendants' article 9 counterclaim in the present case, it is readily apparent that they alleged that the plaintiff failed to furnish *statutorily* compliant notices before and after the repossession and resale of their vehicle. They sought damages not less than the statutory minimum under § 42a-9-625 (c) (2) and (e) (5) as compensation. As in *Bellemare*, the defendants' article 9 counterclaim arose primarily from the plaintiff's alleged violations of the notice provisions of article 9 of the UCC, rather than from the plaintiff's alleged breach of obligations under the parties' contract. In other words, the source of the defendants' cause of action is the statute itself. Accordingly, the defendants' particular article 9 counterclaim is tortious in nature for statute of limitations purposes, and § 52-577 is the most suitable statute of limitations to "borrow . . . ." *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 199.

The defendants argue that, because this court has previously treated claims under article 2 and article 9 of the UCC consistently in certain respects; see *Ulbrich*

v. *Groth*, 310 Conn. 375, 402, 78 A.3d 76 (2013); claims under article 9 should be governed by the four year limitation period in § 42a-2-725. The syllogism is unpersuasive. The fact that "article 9 sales are subject to many of the same protections under the UCC as article 2 sales;" *Ulbrich* v. *Groth*, supra, 403 n.27; does not compel the conclusion that claims arising under article 9 are automatically subject to the limitation period in article 2. Courts in other jurisdictions, when determining whether to apply the article 2 limitation period, consider whether the relevant claim is based on, or closely related to, an action for breach of the sales contract and its terms. See, e.g., *Delaney* v. *First Financial of Charleston, Inc.*, 418 S.C. 209, 216, 791 S.E.2d 546 (App. 2016) (article 2 limitation period did not apply to article 9 notice claims because "[the plaintiff] did not allege a breach of contract"), rev'd on other grounds, 426 S.C. 607, 829 S.E.2d 249 (2019); *DaimlerChrysler Services North America, LLC* v. *Ouimette*, 175 Vt. 316, 320–21, 830 A.2d 38 (2003) (concluding that article 9 deficiency actions concerning retail installment sales contracts were governed by article 2 limitation period because deficiency actions were "more closely related" to sales aspect of contract); see also *Badilla* v. *Wal-Mart Stores East, Inc.*, 357 P.3d 936, 940, 944 (N.M. 2015) (concluding that breach of warranty claim seeking damages for personal injuries was governed by article 2 limitation period but acknowledging that majority approach for application of article 2 limitation period considered whether "the right is based in contract" rather than in tort). These decisions support our conclusion that the defendants' article 9 counterclaim is too attenuated from the sales contract itself to be governed by § 42a-2-725.

## II

The defendants next claim that the trial court improperly applied § 52-585 to their counterclaim brought under § 36a-785 of RISFA. Consistent with our analysis of their article 9 counterclaim in part I of this opinion,

we agree with the defendants that § 52-577 also governs their RISFA counterclaim.

Section 36a-785 (i) allows an aggrieved retail buyer to "recover from the holder of the contract . . . actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract." Like § 42a-9-625, § 36a-785 (i) provides retail buyers with a cause of action for actual damages, if any, or, alternatively, statutory minimum damages. Because § 36a-785 (i) provides no more than a private right of action to aggrieved parties, we cannot conclude that it is a penal statute. See, e.*g.*, *Plumb* v. *Griffin*, supra, 74 Conn. 135; see also *Brady* v. *Daly*, supra, 175 U.S. 156. This is consistent with this court's repeated characterization of RISFA as a remedial statute that must be "construe[d] . . . liberally in order to implement its consumer protection policies." *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 116, 520 A.2d 162 (1987).

As with the defendants' article 9 counterclaim, the applicable limitation period for § 36a-785 is the three year period provided in § 52-577. The defendants' counterclaim under RISFA, namely, that the plaintiff failed to provide statutorily compliant notices before and after the repossession and resale of their motor vehicle, arose from the plaintiff's statutory duties under RISFA and, therefore, is tortious in nature. See *Bellemare* v. *Wachovia Mortgage Corp.*, supra, 284 Conn. 201.

On remand, the trial court should apply the three year limitation period set forth in § 52-577 to the defendants' article 9 and RISFA counterclaims, and determine whether those counterclaims are timely.

We note two other issues related to statutes of limitations that this opinion does not address, which may require attention on remand. First, because the trial court applied the one year limitation period to the defendants' counterclaims, it did not address the effect of the executive orders issued by Governor Ned Lamont in response to the COVID-19 pandemic. On remand, the

timeliness of the counterclaims may be affected by the executive order that tolled all limitation periods beginning on March 19, 2020; see Executive Order No. 7G (March 19, 2020); and the subsequent executive order that ended tolling on March 1, 2021. See Executive Order No. 10A (February 8, 2021).

Second, because the trial court denied the defendants' motion for class certification on the basis of its conclusion that the defendants' counterclaims were time barred pursuant to § 52-585, on remand, it necessarily must reconsider the defendants' class certification motion in light of this decision. We acknowledge, however, that the plaintiff argues that the claims of certain class members of the defendants' putative class are untimely because the defendants failed to move for class certification until November 30, 2023. In response, the defendants argue that this appeal concerns only their individual counterclaims against the plaintiff, not the class action counterclaims. The defendants also argue that their class action counterclaims are timely pursuant to the rule articulated in *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), under which "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action . . . ." *Grimes* v. *Housing Authority*, 242 Conn. 236, 244, 698 A.2d 302 (1997); see *American Pipe & Construction Co.* v. *Utah*, supra, 554. The defendants filed their amended counterclaim as a class action on July 24, 2019. Because the trial court has not yet ruled on this issue and additional development of the record may be necessary to establish the timeliness of the counterclaims, we leave this issue to the trial court in the first instance on remand.

The trial court's decision granting the plaintiff's motion for summary judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.